In the Matter of LEFT GUARD OF MADISON, INC., Fuzzy Thurston's Janesville Left Guard, Inc., and Fuzzy Thurston's Eau Claire Left Guard, Inc., Debtors.

Bankruptcy Nos.
MM11–79–01414—MM11–79–01416.

United States Bankruptcy Court,
W. D. Wisconsin.

May 8, 1981.

Roger G. Schnitzler, Van Metre, Hanson, Clarke & Schnitzler, Madison, Wis., for Left Guard of Madison, Inc., Fuzzy Thurston's Janesville Left Guard, Inc. and Fuzzy Thurston's Eau Claire Left Guard, Inc., debtors.

Carlton Roffa, Milwaukee, Wis., for Herbert Schoenherr, petitioner.

## OPINION

ROBERT D. MARTIN, Bankruptcy Judge.

A hearing on Herbert Schoenherr's claim for administrative expenses was held on March 19, 1981. Judge Steinmetz appointed Schoenherr as receiver for the Fuzzy Thurston Restaurants, Inc. on November 8, 1979. Fuzzy Thurston's Restaurants, Inc. (hereinafter the Company) included five restaurants: Left Guard of Madison, Inc., Fuzzy Thurston's Janesville Left Guard, Inc., Fuzzy Thurston's Eau Claire Left Guard, Inc., Fuzzy Thurston's Milwaukee Left Guard, Inc., and Fuzzy Thurston's Tyr-

olean Restaurant, Inc. Schoenherr's appointment was in connection with a Milwaukee County Circuit Court action by the above-named entities as plaintiff against Neil Woodington and William Jenewein as defendants. Schoenherr served as receiver for eight days from November 8, 1979, to November 16, 1979, when the Milwaukee Circuit Court action was dismissed with prejudice pursuant to the parties' stipulation.

During the period that Schoenherr acted as receiver for the Company, he conscientiously attempted to unravel the complicated affairs of the Company while keeping the restaurants open. His efforts were made more difficult by Neil Woodington's refusal to give Schoenherr access to the restaurants' money, books, accounts, records, documents, and keys to the various premises operated by the Company. The financial affairs of the corporation and of each restaurant it controlled were complex and intertwined. The records available to Schoenherr were confused and incomplete. Schoenherr spent at least 100 hours while he was the court-appointed receiver attempting to unscramble the financial affairs of the Company and to keep the restaurants open.

On November 15, 1979, a settlement agreement was signed by all parties to the Milwaukee Circuit Court action. The following day, November 16, 1979, Judge Steinmetz dismissed the action, dissolving all previously entered orders related to that action. On that same day, Internal Revenue Service officer, Marvin Hilke, arranged a meeting to demand payment of withholding taxes owed by each of the Company's five restaurants. Schoenherr was present with his accountant, Mr. Kuper, at the meeting, as were Earl Charlton and Eugene Shorts (partial owners of the Company), and Neil Woodington and William Jenewein (the parties operating the Company prior to Schoenherr's appointment as receiver). Mr. Hilke demanded immediate payment of all withholding taxes for all of the Company's restaurants, informing the group that if payment was not made immediately, the

restaurants would be closed by the Internal Revenue Service. At the time of the meeting, Hilke had not received approval from the District Director to close the restaurants as is required before the Internal Revenue Service agent could actually close the restaurants. In fact, Hilke never received approval to close the restaurants and, therefore, could not have closed them if no payments were made. During the meeting, Hilke received a telephone call informing him that he was unable to get approval to close the restaurants, but he did not disclose this information. At some point thereafter, Shorts, Charlton and Schoenherr met privately with Hilke and Schoenherr paid Hilke $10,483.82 from his personal funds toward the withholding taxes owed by the Tyrolean and Milwaukee Left Guard restaurants (hereinafter Milwaukee restaurants). Schoenherr made an arrangement with Hilke to pay the remaining taxes owed by the Milwaukee restaurants on November 19, 1979. The additional $7,310.46 was paid by Schoenherr from his personal funds on that date as agreed. Receipts were issued by Hilke for the taxes paid by Schoenherr indicating the taxes paid were those of the Tyrolean and Milwaukee Left Guard restaurants. At the time Schoenherr made both tax payments, he was no longer the receiver for the Company, although he may not have had knowledge of the order dismissing the Circuit Court action and ending his appointment as receiver until later.

On November 16, 1979, at approximately the same time the Internal Revenue Service meeting was taking place, Chapter 11 petitions in bankruptcy were filed in the Western District of Wisconsin for Left Guard of Madison, Inc., Fuzzy Thurston's Janesville Left Guard, Inc., and Fuzzy Thurston's Eau Claire Left Guard, Inc. Hilke was informed of the filing of these petitions that same afternoon.

Schoenherr presents two claims for administrative expenses, the first for compensation as the court-appointed receiver for the Company and the second for the withholding taxes owed by the Tyrolean and Milwaukee Left Guard restaurants that were paid with his personal funds.

11 U.S.C. § 503(b)(3)(E) states:

§ 503. *Allowance of administrative expenses.*

(b) After notice and a hearing, there shall be allowed, administrative expenses, other than claims allowed under section 502(f) of this title, including—

(3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by—

(E) a custodian superseded under section 543 of this title, and compensation for the services of such custodian . . . .

Schoenherr, as a court-appointed receiver, is admittedly a custodian as defined in 11 U.S.C. § 101(10)(A) and therefore is entitled to compensation pursuant to 11 U.S.C. § 503(b)(3)(E). The amount of compensation Schoenherr is entitled to is disputed. The Milwaukee County Circuit Court fixed Schoenherr's compensation as receiver for the Company at $5,000, but that figure is not binding on this court. "[T]he supervention of bankruptcy deprives a state court, in which a receivership was pending, of power to fix the compensation of the receivers and their counsel who were appointed by the state court and who rendered service in the state court proceedings." *Brown v. Gerdes,* 321 U.S. 178, 64 S.Ct. 487, 88 L.Ed. 659 (1944).

When the corporate property falls by operation of law into the bankruptcy court, that court by comity will indulge the presumption in favor of the correctness of the allowance; but the court of bankruptcy, having the responsibility of administration, must exercise its independent judgment, giving due weight to the presumption in favor of the administrative finding of the court of equity. *In Re Insull Utility Investments,* 74 F.2d 510, 515 (C.A. 7th Cir. 1935).

The standard a bankruptcy court must apply in determining a custodian's compensation is provided in 11 U.S.C. § 543(c)(2), which states:

(c) The court, after notice and a hearing, shall—

(2) provide for the payment of reasonable compensation for services rendered and costs and expenses incurred by such custodian . . . .

■ Prior to October 1, 1979, the Bankruptcy Act was interpreted as requiring the following elements to be considered in determining the value of the service of a state court receiver:

The time spent, the intricacy of the problems involved, the size of the estate, the opposition met, the results achieved—all subject to the economical spirit of the Bankruptcy Act. (Cites omitted.) The preceding factors are of course to be noticed only insofar as the services have tended to preserve or benefit the estate. *In Re Garrett Road Corporation*, 256 F.Supp. 709, 713 (E.D.Pa.1966).

The elements considered in determining compensation for a receiver's services are similar under Wisconsin law.

There is no *per diem*, percentage, or salary rule that governs in fixing the compensation to be paid to a receiver for his services, yet there are some rules to go by. He is entitled to compensation for services of the kind required of a business agent having regard to the nature of the matter administered, the amount involved, the complications attending it, the time spent, the degree of success attained under all the circumstances, the fidelity to details, the appreciation evidenced as to the responsibilities of the position, the character of such responsibilities, the expedition with which the trust has been administered in view of results reached, the method, character, and promptness of the accounting, and many other things that could be suggested, having regard, of course, to what is commonly paid for somewhat similar services in the performance of official duties, not the standard in private business transactions. *Harrigan v. Gilchrist*, 121 Wis. 127, 435, 99 N.W. 909 (1904).

Because of the difficulty in determining a receiver's compensation, Wisconsin has accepted a general rule, "that a reasonable and fair compensation should be allowed, according to the circumstances of the particular case." *Union National Bank of Chicago v. Mills*, 103 Wis. 39, 79 N.W. 20 (1899). The court further suggested that if the court "is in doubt as to what will be. a reasonable allowance, he should do as was done in this case,—take the testimony of men of experience in such matters, and from that testimony *and his own knowledge of the situation* fix the receiver's pay at such an amount as would seem just and fair in the premises." *Union National Bank of Chicago*, at page 41, 79 N.W. 20.

■ Earl Charlton, a Milwaukee attorney and part owner of the Company, testified that receivers were paid from $35 to $50 an hour in Milwaukee County. His testimony, as well as that of the other witnesses, established the confused and complex nature of the Company's business at the time Schoenherr was receiver. Upon that testimony and my familiarity with such matters generally, I find $50 an hour to be a reasonable rate of compensation for Schoenherr as receiver. Schoenherr certainly earned a $5,000 fee for his 100 hours of work in this case.

The testimony established that the affairs of the five restaurants were totally intertwined. Although he spent all of his time in the Milwaukee area, Schoenherr's work presumably benefited all five restaurant operations. Specific time spent by Schoenherr cannot be traced to separate entities. It would effect the simplest form of equity to calculate that each of the five restaurants is responsible for an equal portion of the receiver's fees. This court has jurisdiction over three of the entities, Left Guard of Madison, Inc., Fuzzy Thurston's Janesville Left Guard, Inc., and Fuzzy Thurston's Eau Claire Left Guard, Inc. An administrative expense of $1,000 for Schoenherr's compensation while acting as a state court-appointed receiver would, therefore, be a reasonable allowance in each of the three cases under this court's jurisdiction.

■ Schoenherr has also requested that the $17,794.28 he paid to the Internal Revenue Service for withholding taxes owed by

the Tyrolean and Milwaukee Left Guard restaurants be treated as an administrative expense pursuant to 11 U.S.C. § 503(b)(1)(A), which states:

> (b) After notice and a hearing, there shall be allowed, administrative expenses, other than claims allowed under section 502(f) of this title, including—
>
> (1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case:
>
> \*   \*   \*   \*   \*   \*

Schoenherr seeks to recover from the Madison, Janesville and Eau Claire Left Guard restaurants taxes he paid on behalf of the two Milwaukee restaurants. He argues that his payment of the Milwaukee restaurants' taxes benefited all the restaurants by preventing their being closed by the Internal Revenue Service. The facts do not support that contention.

At the time Schoenherr paid the Milwaukee restaurants' taxes with his own funds, he was no longer the state court-appointed receiver and, therefore, lacked any authority in the matter. Furthermore, his payment of the taxes did not benefit the Madison, Janesville or Eau Claire restaurants. Even if no taxes were paid, the agent who threatened the closing did not have the required permission to close these entities. Although bluffed into thinking so, Schoenherr did not face a genuine threat and reasonable investigation would have revealed that fact to him.

The Madison, Janesville, and Eau Claire restaurants all filed Chapter 11 petitions in bankruptcy at approximately the same time as Schoenherr made the first payment for the Milwaukee restaurants' withholding taxes. Once the Chapter 11 petitions were filed, of which the Internal Revenue Service has admitted it had actual notice the afternoon of the filing, the automatic stay of 11 U.S.C. § 362 prevented the Internal Revenue Service from acting to collect any taxes owed by the Madison, Janesville, and Eau Claire restaurants. The payment by Schoenherr of the Milwaukee restaurants' withholding taxes was not an actual and necessary cost to preserve the estates of the Madison, Janesville or Eau Claire restaurants. The tax payment was of no benefit to these entities and cannot be allowed as an administrative expense in their cases.

Upon the foregoing, which constitute my findings of fact and conclusions of law, I hereby

ORDER that an administrative expense of $1,000 each be allowed in the Left Guard of Madison, Inc., Fuzzy Thurston's Janesville Left Guard, Inc., and Fuzzy Thurston's Eau Claire Left Guard, Inc. cases.