**In re CCN REALTY CORP., Debtor.**

**Bankruptcy No. 82 B 20146.**

United States Bankruptcy Court, S. D. New York.

April 16, 1982.

Charles H. Weintraub, White Plains, N. Y., for debtor.

Julian Hyman, Receiver, New Rochelle, N. Y.

Morris Block, New Rochelle, N. Y., for receiver.

HOWARD SCHWARTZBERG, Bankruptcy Judge.

CCN Realty Corp., the debtor in possession in this Chapter 11 case seeks an order under 11 U.S.C. § 543 directing a receiver appointed by the New York Supreme Court, Westchester County, in a mortgage foreclosure action brought by the Flushing Savings Bank, to turn over rents that the receiver collected on behalf of the debtor. The Flushing Savings Bank resists the motion and argues that a turnover of the funds now in the hands of the receiver, approximating $60,000, would impair the rights of the bank because the receiver was appointed for its benefit in connection with the foreclosure action. Alternatively, the bank requests that this court exercise its discretion pursuant to 11 U.S.C. § 543(d) and permit the receiver to continue in possession.

## FACTS

1. The debtor filed with this court its petition for relief under Chapter 11 of the Bankruptcy Code on March 12, 1982. The debtor is a real estate holding corporation. Its only asset is the real estate which is the subject of a foreclosure action commenced by the mortgagee, Flushing Savings Bank. The bank holds a secured claim in excess of $4,000,000 secured by the debtor's real estate, allegedly valued at $1,750,000. The president and sole shareholder of the debtor is Richard J. Sanchez, who is licensed by the New York State Department of Social Services to operate a 250 bed proprietary home for adults, known as the New Rochelle Nursing Home, located on the real estate owned by the debtor on Lockwood Avenue, New Rochelle, New York.

2. Prior to the Chapter 11 petition and during the course of the foreclosure action, the bank sought and obtained the appointment of a receiver to collect rents. The state court order appointing the receiver was dated November 7, 1980. The receiver applied to the New York Supreme Court, Westchester County, for an order fixing the rental value of the mortgaged premises because the debtor had no lease with the adult home located on the debtor's property, nor did it appear that the debtor ever collected rent from the adult home. During the course of the rent application proceeding, the state court ordered Richard Sanchez to pay to the receiver the sum of $8,600 per month pending the final determination by the court as to the rental value.

3. After making some payments, Sanchez and the adult home defaulted in payments, which resulted in a state court order, dated January 22, 1982, holding Sanchez and the debtor in contempt of court for having wilfully disobeyed the court order directing the payment of rent.

4. As a result of the filing of the debtor's Chapter 11 petition, the receiver was automatically stayed under 11 U.S.C. § 362 from proceeding with the enforcement of the contempt order against the debtor and from proceeding to fix the rental value of the premises.

5. The receiver is presently holding rent collections totalling approximately $60,000.

6. According to the debtor's schedules, it is a nonoperating real estate holding company; it pays no salaries and has no available books and records.

## DISCUSSION

The governing statute is 11 U.S.C. § 543(b), which provides in relevant part as follows:

"(b) A custodian shall—

"(1) deliver to the trustee any property of the debtor transferred to such custodian, or proceeds of such property, that is in such custodian's possession, custody, or control on the date that such custodian acquires knowledge of the commencement of the case; and

"(2) file an accounting of any property of the debtor, or proceeds of such property, that, at any time, came into the possession, custody, or control of such custodian."

■ There is no question that a receiver appointed by a state court is a custodian within the meaning of 11 U.S.C. § 101(10). *In re Left Guard of Madison, Inc.*, 11 B.R. 238, 7 B.C.D. 974 (Bkrtcy., Wisc.1981). However, the bank argues that the rents collected by the receiver were not property of the estate as contemplated under 11 U.S.C. § 541. The bank reasons that the rents were monies paid by the adult home operating its business at the debtor's premises and, therefore, could not have been

funds of the debtor because the debtor's schedules indicate that its only asset was the real estate holding company with no expenses and no assets other than the real estate. This argument is unpersuasive. The concept of property of the estate is defined very broadly under 11 U.S.C. § 541(a)(1) and includes "all legal or equitable interests of the debtor in property as of the commencement of the estate." Furthermore, 11 U.S.C. § 541(a)(6) expressly includes "Proceeds, product offspring, *rents*, and profits of or from property of the estate . . .". (Emphasis added) It matters not how the debtor viewed the collected rents; the view expressed in 11 U.S.C. § 541(a)(6) controls.

■ The bank's alternative position stands on more solid ground. The bank seeks to have the receiver continue collecting rents from the adult home, as a tenant of the debtor without a lease, and to hold the funds subject to further order of this court. This court has discretion to authorize the custodian to continue in possession or control of property of the estate held by the custodian because 11 U.S.C. § 543(d) expressly so provides:

"The bankruptcy court may, after notice and a hearing, excuse compliance with subsection (a), (b), or (c) of this section, if the interests of creditors, and, if the debtor is not insolvent, of equity security holders, would be better served by permitting a custodian to continue in possession, custody or control of such property."

In this case, the debtor has no incentive to collect rents from the adult home located on its premises and operated by its sole shareholder. Indeed, even after the debtor was directed by a state court to collect rents from the adult home, it failed to do so, resulting in the issuance of an order by the state court holding the debtor and its sole shareholder in contempt. The debtor has no lease with the adult home for its use and occupation of the premises nor does this court have any jurisdiction over the adult home, notwithstanding that it is owned and operated by the debtor's sole shareholder;

the adult home did not file for relief under the Bankruptcy Code. Accordingly, it would be an overly optimistic visionary who would expect the debtor to be diligent in the collection of rents from the adult home. Moreover, the debtor does not appear to be engaged actively in any business other than the ownership of the real estate upon which the adult home is located. Its major financial goal is to satisfy the secured claim asserted by the bank. Therefore, the collection of rents could serve no meaningful purpose other than to be applied toward this obligation, which is precisely what the bank requests. The debtor, as distinguished from its sole shareholder, is not the operator of the adult home and cannot be heard to say that the funds are necessary for the conduct of the adult home's business. The debtor is a separate entity and this distinction should be observed.

The custodian's continued collection and possession of the rents will ensure the observance of the distinction between the responsibilities of the debtor to its creditors and those of the adult home to its obligees. It has been held that the court may excuse a custodian's compliance with the turnover requirements under 11 U.S.C. § 543(b) where there was evidence of mismanagement in the debtor's operations. *In re WPAS, Inc.*, 6 B.R. 40, 6 B.C.D. 1112 (Bkrtcy., MD Fla.1980). Certainly an equally compelling need for the custodian's continued collection and possession of rents exists where the debtor has no operations at all and no available books and records. Whatever need the debtor might have for the funds under such circumstances (which has not been demonstrated in this case) is outweighed by the requirement that the creditors' interests in collection and preservation of the rent proceeds be protected. The bank is justifiably concerned that the turnover of the collected rent proceeds may be a prelude to their being frittered away. As the Prince of Wales said to Falstaff: "As, for proof now: a purse of gold most resolutely snatched on Monday night and most dissolutely spent on Tuesday morning." Henry IV, Part I, Act ii, 38.

Although the bank regards the state court appointed receiver as its custodian, such is not the case. A custodian within the meaning of 11 U.S.C. § 101(10) functions for all of the creditors and is charged with protecting the interests of the entire creditor body. See *In re Meyer's Inc.*, 15 B.R. 390, 8 B.C.D. 418 at 419 (Bkrtcy., SD Cal.1981) where the court said:

"Congress intended that definition to apply to a third party acting, not for the benefit of one creditor, but rather for the benefit of all creditors."

## CONCLUSIONS OF LAW

The funds collected and held by the state court receiver, qua custodian, during the continuance of this case shall be invested by the custodian so as to yield the maximum reasonable return in accordance with the requirements of 11 U.S.C. § 15345(b) and may be disbursed only in accordance with an order of this court. The debtor's motion for a turnover of the funds collected by the state court receiver is denied. This is without prejudice to the debtor's right to apply subsequently for a turnover of these funds upon a showing that a reorganization is likely, that these funds are needed in order to effect such reorganization and that they will be applied towards such reorganization.

Submit order on notice.