FRENCH BOUREKAS INC., Appellant,

v.

William TURNER, as Receiver, Appellee.

FRENCH BOUREKAS INC., Appellant,

v.

William TURNER, as Receiver, Appellee.

FRENCH BOUREKAS INC., Appellant,

v.

William TURNER, as Receiver, Appellee.

FRENCH BOUREKAS INC., Appellant,

v.

William TURNER, as Receiver, Appellee.

FRENCH BOUREKAS INC., Appellant,

v.

UNITED CAPITAL CORP. and Clinton–Bush Corp., Appellees.

Nos. CV–95–4514, CV–95–4766, CV–95–5388, CV–96–213 and CV–96–645.

United States District Court,
E.D. New York.

May 8, 1996.

Gerard Zwirn, New York City, for French Bourekas Inc.

Raymond T. Mellon, Zetlin & De Chiara, New York City, for William Turner.

## MEMORANDUM AND ORDER

GLASSER, District Judge:

### SUMMARY

These are appeals of orders issued by Bankruptcy Judge Marvin Holland in the context of a state declaratory judgment action that was removed to Bankruptcy Court for the Eastern District of New York as an adversary proceeding. The Chapter 11 debtor is 183 Lorraine Street Associates ("Lorraine"), a single-asset real estate holding company. The appellant, French Bourekas, Inc. ("FBI"), was a former tenant at 183 Lorraine Street, Brooklyn, New York (the "Premises").

Although these appeals are entangled in an elaborate procedural web involving three bankruptcies and numerous state court actions, their substance is relatively simple. They concern the FBI's obligation to pay rent and the consequences of FBI's refusal to do so. For the reasons that follow, appeals 95–CV–4514, 95–CV–4766, 96–CV–213, and 96–CV–645 are dismissed and appeal 95–CV–5388 is denied.

### FACTS

For the purposes of these appeals the relevant facts are as follows:

#### UCC's Mortgage

On February 2, 1988, the predecessor of United Capital Corporation ("UCC") con-veyed title to the Premises to Lorraine in exchange for an executed promissory note in the amount of $750,000. *See United Capital Corp. v. 183 Lorraine Street Associates,* Kings Co. Index. No. 16846/90 slip op. at 5 (N.Y.Sup.Ct. May 28, 1991). The $750,000 promissory note was secured by an executed purchase money mortgage in favor of UCC's predecessor.[1] As additional security, Lorraine executed and delivered an assignment of rents from leases it had granted or would grant. *Id.*

#### FBI's Lease

On August 25, 1989, FBI obtained a fifteen-year lease (the "Lease") for 10,000 square feet of the Premises from Lorraine. The Lease included a rent abatement for the first two years and required FBI to pay $2,000 per month thereafter. Paragraph 7 of the Lease provided that it was expressly subordinated to the mortgage held by United Capital Corporation ("UCC").

#### The Foreclosure Action

In May 1990, Lorraine defaulted on its mortgage obligations to UCC. On June 25, 1990, UCC commenced a foreclosure action in New York Supreme Court for Kings County pursuant to which a receiver, William Turner ("Turner"), was appointed. UCC obtained a summary judgment of foreclosure against Lorraine in May 1991. *United Capital Corp. v. 183 Lorraine Street Associates et al.,* Kings Co. Index No. 16846/90 (N.Y.Sup. Ct. May 28, 1991). In February 1992, UCC added FBI as a defendant in the foreclosure action. On January 20, 1993, UCC obtained a summary judgment of foreclosure against FBI. *United Capital Corp. v. 183 Lorraine Street Associates et al.,* Kings Co. Index No. 16846/90 (N.Y.Sup.Ct. Jan. 20, 1993). FBI appealed.

#### FBI's Bankruptcy

On July 6, 1993, before exhausting its rights to appeal the summary judgment of foreclosure, FBI filed a voluntary Chapter 11 petition in Bankruptcy Court for the Southern District of New York. *In re French Bourekas Inc.,* Ch. 11 No. 93–B–43470 (S.D.N.Y. July 6, 1993). FBI's bankruptcy is

---

1. It is undisputed that UCC's predecessor, Metropolitan Consolidated Industries, Inc., presumably made valid assignments of these interests to UCC.

recounted in greater detail in a published opinion, *In re French Bourekas Inc.*, 175 B.R. 517 (Bankr.S.D.N.Y.1994), but the following relevant facts are, it is hoped, helpful in understanding these appeals.

On November 3, 1993, Bankruptcy Judge Tina Brozman issued an order that provided in part:

> [FBI] shall hereafter pay such monthly rent to the Receiver in accordance with the terms of the lease until such obligation is terminated or otherwise modified by Court Order or foreclosure.

*In re French Bourekas Inc.*, Ch. 11 No. 93–B–43470 (S.D.N.Y. Nov. 3, 1993). FBI objected to the order, claiming that heat and hot water were included under the Lease and that its rental obligations should therefore be offset by gas expenses it had incurred in providing heat and hot water.

On April 21, 1994, Judge Brozman amended the November 3, 1993 order. The Amended Order permitted FBI to offset its post-petition rental obligations by $809.21, which represented the extent of FBI's documented post-petition gas payments. The amended order also provided:

> [I]n the event of a default by [FBI] in making the rental payments as herein directed, United Capital Corp. and/or the Receiver may settle an order on three (3) days notice, (a) deeming the lease rejected, and (b) directing the U.S. Marshal Service to recover possession of the subject premises[.]

*In re French Bourekas Inc.*, Ch. 11 No. 93–B–43470 (S.D.N.Y. Apr. 22, 1994).

On October 5, 1994, Judge Brozman granted FBI's motion to dismiss its bankruptcy petition with prejudice because of its conceded inability to formulate a plan of reorganization. On December 13, 1994, Judge Brozman sanctioned counsel for FBI, Gerard Zwirn, for his misrepresentations during the

course of FBI's Chapter 11 petition. *See In re French Bourekas*, 175 B.R. at 522–24.

### The Lorraine Bankruptcy

On September 26, 1994, FBI and two other creditors filed an involuntary Chapter 11 petition against Lorraine. *In re 183 Lorraine Street Associates*, Ch. 11 Case No. 94–17830–352 (E.D.N.Y. Sept. 26, 1994). This bankruptcy petition later served as a pretext for FBI to remove several tangentially related state court actions to bankruptcy court.

### The Declaratory Judgment Proceeding

Although FBI paid rent to Turner during its bankruptcy petition (July 1993 to October 1994), it ceased paying rent as of November 1994. On April 26, 1995, Turner served a Notice of Default on FBI informing it that it was in violation of paragraph 11 [2] of the Lease and several other Lease provisions. The Notice of Default provided that if the defaults were not cured within five days, Turner would serve upon FBI a Notice of Cancellation of the Lease, which would provide that three days thereafter the Lease would be deemed rejected and FBI would be required to vacate the Premises.

On April 28, 1995, FBI commenced a declaratory judgment action in New York Supreme Court for Kings County to determine its rights and obligations under the Lease. *French Bourekas Inc. v. Turner*, Kings Co. Index No. 13860/95 (N.Y.Sup.Ct. Apr. 28, 1995). FBI obtained a temporary restraining order tolling the time for it to cure the alleged defaults under the Lease pending the outcome of the declaratory judgment action.[3]

On May 2, 1995, FBI removed the declaratory judgment action to Bankruptcy Court for the Eastern District of New York pursuant to 28 U.S.C. § 1452 and Bankruptcy Rule 9027. *See French Bourekas Inc. v. Turner* (*In re 183 Lorraine Street Associates*), Ch. 11 No. 194–17830–352, Adv. No. · 195–1184 (E.D.N.Y. May 2, 1995) (the "declaratory judgment proceeding"). On June 2, 1995,

---

**2.** Paragraph 11 of the Lease provides:

Tenant ... expressly covenants that it shall not ... underlet or permit the demised premises or any part thereof to be used by others, without the prior written consent of Owner in each instance[.]

**3.** This type of restraining order is known as a "Yellowstone" injunction. It allows a tenant to avoid forfeiting its leasehold pending a determination of the alleged breaches on the merits. *See, e.g., Hollymount Corporation v. Modern Business Associates, Inc.*, 140 A.D.2d 410, 411, 528 N.Y.S.2d 113, 114 (2d Dept.1988).

Turner counterclaimed for $16,000 in rent due under the Lease from November 1994 to June 1995.

### The Pre–Hearing Order, Motion To Vacate, and Appeal

On July 14, 1995, Bankruptcy Judge Marvin Holland issued a Pre–Hearing Order [4] in the declaratory judgment proceeding. FBI failed to comply with the Pre–Hearing Order.

On September 8, 1995, Turner moved to sanction FBI for ignoring the Pre–Hearing Order. FBI responded by filing a motion to vacate the Pre–Hearing Order. On November 16, 1995, the bankruptcy court entered an order denying FBI's motion to vacate. *French Bourekas Inc. v. Turner (In re 183 Lorraine Street Associates )*, Ch. 11 No. 194–17830–352, Adv. No. 195–1184, Order (E.D.N.Y. Nov. 16, 1995). On November 27, 1995, FBI timely filed a notice of appeal of the denial of its motion to vacate.[5] That appeal was docketed in this court as **96–CV–213.**

### The July 21, 1995 Order and Appeals

On July 13, 1995, Turner moved for an order to compel FBI to pay all post-petition rent due under the Lease. On July 21, 1995, the bankruptcy court entered an order that required FBI to pay Turner $18,000 (representing post-petition rent of $2,000 per month from November 1994 to July 1995) and to make all subsequent rental payments by the fifth day of each month. *French Bourekas Inc. v. Turner (In re 183 Lorraine Street Associates )*, Ch. 11 No. 94–17830–352, Adv. No. 195–1184, Order (E.D.N.Y. July 21, 1995).

On July 31, 1995, FBI timely moved in the alternative (a) for relief from the July 21, 1995 order compelling FBI to pay rent, pursuant to Bankruptcy Rule 9024;[6] or (b) to amend Judge Holland's July 21, 1995 order so as to eliminate the provisions requiring FBI to pay rent, pursuant to Bankruptcy Rule 9023.[7] While the motion was pending, FBI neither complied with the July 21, 1995 order nor obtained a stay of that order pursuant to Bankruptcy Rule 7062 [8] or Bankruptcy Rule 8005.[9]

On September 8, 1995, upon Turner's motion, the bankruptcy court entered an order citing FBI for civil contempt of its July 21, 1995 order and directing FBI either to pay within five days the amount of rent then owed without offset, or to vacate the Premises within ten days. The order provided further that if neither direction was obeyed, Turner could seek an order directing the United States Marshall to enforce the sanction. *French Bourekas Inc. v. Turner (In re 183 Lorraine Street Associates )*, Ch. 11 No. 194–17830–352, Adv. No. 195–1184, Order (E.D.N.Y. Sept. 8, 1995). On September 18, 1995, FBI filed a timely notice of appeal of that order. That appeal was docketed in this court as **95–CV–4514.**

### The Eviction

On October 17, 1995, the bankruptcy court entered an order authorizing the United

---

4. The Pre–Hearing Order directed the parties (1) to confer; (2) to submit within twenty days a set of "marked pleadings" identifying factual and legal issues both in dispute and not in dispute, and lists of exhibits and witnesses; and (3) to submit within thirty days a responsive statement of objections to the materials provided by the other parties.

5. The filing of FBI's motion to vacate had tolled the time for appealing the underlying order until the resolution of the motion. See Bankruptcy Rule 8002(b).

6. Bankruptcy Rule 9024 provides generally that "Rule 60 F.R.Civ.P. applies in cases under the Code."

7. Bankruptcy Rule 9023 provides generally that "Rule 59 F.R.Civ.P. applies in cases under the Code."

8. Fed.R.Civ.P. 62, which is made applicable to adversary proceedings in bankruptcy by reference through Bankruptcy Rule 7062, provides in part:

> **(b) Stay on Motion for New Trial or for Judgment.** In its discretion and on such conditions for the security of the adverse party as are proper, the court may stay the execution of any proceedings to enforce a judgment pending the disposition of a motion for a new trial or to alter or amend a judgment[.]

9. Bankruptcy Rule 8005 provides generally that

> … Notwithstanding Rule 7062 but subject to the power of the district court … reserved hereinafter, the bankruptcy judge may suspend or order the continuation of other proceedings in the case under the Code or make any other appropriate order during the pendency of an appeal on such terms as will protect the rights of all parties in interest.

States Marshal to evict FBI from the Premises. *French Bourekas Inc. v. Turner (In re 183 Lorraine Street Associates)*, Ch. 11 No. 194–17830–352, Adv. No. 195–1184, Order (E.D.N.Y. Oct. 17, 1995). On October 18, 1995, FBI filed a timely notice of appeal of this order. That appeal was docketed in this court as **95–CV–4766.**

FBI did not obtain a stay of the eviction order. On November 1, 1995, FBI was evicted from the Premises.

### FBI's Second Bankruptcy

On the eve of its eviction, FBI filed a second Chapter 11 petition in Bankruptcy Court for the Southern District of New York, this time in the White Plains courthouse. After a hearing on October 30, 1995, Bankruptcy Judge Adlai Hardin made a finding that the petition was filed in bad faith.

Judge Hardin dismissed FBI's second bankruptcy petition with prejudice; prohibited FBI from filing future bankruptcy petitions for 24 months; awarded $5,000 in sanctions to UCC; and provided that the filing of any future bankruptcy petitions would not act as a stay of proceedings regarding FBI's leasehold interest in the Premises. *See In re French Bourekas Inc.*, Ch. 11 No. 95–B–21955 (S.D.N.Y. Dec. 6, 1995).

### The Denial of FBI's Motion for Relief from the Order To Pay Rent

On November 24, 1995, the Bankruptcy Court for the Eastern District of New York entered an order denying FBI's motion for relief from the bankruptcy court's July 21, 1995 order. *French Bourekas Inc. v. Turner (In re 183 Lorraine Street Associates)*, Ch. 11 No. 194–17830–352, Adv. No. 195–1184, Order (E.D.N.Y. Nov. 24, 1995). On Novem-

ber 30, 1995, FBI filed a timely notice of appeal of the underlying order.[10] That appeal was docketed in this court as **95–CV–5388.**

On December 5, 1995, FBI moved in the Bankruptcy Court by Order To Show Cause for relief from the Bankruptcy Court's orders pending resolution of appeals **95–CV–4514, 95–CV–4766,** and **95–CV–5388.** On December 5, 1995, Judge Holland denied that motion, writing:

> Although Fed.R.Bankr.P. 8005[11] requires that the initial application for a stay pending appeal first be made to this Court, it has always been my policy to deny such applications in order to give the district court, the court before which the appeal will be heard, the full opportunity to grant or deny such appeal in the first instance.

*FBI v. Turner (In re 183 Lorraine Street Associates)*, Ch. 11 No. 94–17830–352, Adv. No. 195–1184, Order (E.D.N.Y. Dec. 5, 1995).

On December 14, 1995, FBI requested leave from District Court Judge Frederick Block[12] to file an emergency motion pursuant to Bankruptcy Rule 8011(d)[13] pending resolution of appeals **95–CV–4514** and **95–CV–4766.** On December 29, 1995, FBI filed another Emergency Order To Show Cause why relief should not be granted pending resolution of appeals **95–CV–4514** and **95–CV–4766.**

### FBI's Abandonment of Property

On December 20, 1995, UCC moved the Bankruptcy Court for an order declaring that FBI abandoned all of its property remaining at the Premises. The Bankruptcy Court granted that motion by an order entered on

---

10. The filing of FBI's July 31, 1995 motion had tolled the time for appealing the underlying order until the resolution of the motion. See Bankruptcy Rule 8002(b).

11. Bankruptcy Rule 8005 provides in pertinent part:

> A motion for a stay of the judgment, order, or decree of a bankruptcy judge, for approval of a supersedeas bond, or for other relief pending appeal must ordinarily be presented to the bankruptcy judge in the first instance.

12. Appeals **95–CV–4514** and **95–CV–4766** had been assigned to Judge Block in the absence of any indication from FBI that they were related to

appeals **95–CV–3137** or **95–CV–3628,** earlier matters that I had resolved. Soon after it was discovered that all of those appeals were related to the bankruptcy of Lorraine, the appeals before Judge Block and all subsequent appeals related to that bankruptcy were assigned to me in the interest of judicial economy.

13. Bankruptcy Rule 8011(d) sets forth the procedures by which a movant may request "expedited action on the ground that, to avoid irreparable harm, relief is needed in less time than would normally be required for the district court ... to receive and consider a response."

January 4, 1996. *French Bourekas Inc. v. Turner* (*In re 183 Lorraine Street Associates* ), Ch. 11 No. 194–17830–352, Adv. No. 195–1184, Order (E.D.N.Y. Jan. 4, 1996). In addition, the Bankruptcy Court denied FBI's oral application to stay the order pending appeal. On January 16, 1996, FBI filed an **untimely** notice of appeal from the January 4, 1996 order. That appeal was docketed in this court as **96–CV–645.**

On January 19, 1996, this court held a status conference on the appeals then pending. A briefing schedule was set, and the appeals were set down for argument on March 22, 1996.

On February 28, 1996, the bankruptcy court entered an order granting Turner's motion to dismiss the declaratory judgment proceeding. *French Bourekas Inc. v. Turner* (*In re 183 Lorraine Street Associates* ), Ch. 11 No. 194–17830–352, Adv. No. 195–1184, Order (E.D.N.Y. Feb. 28, 1996).

On March 22, 1996, counsel for FBI, Gerard Zwirn failed to appear at the status conference before this court. Instead, Zwirn sent a colleague unfamiliar with the appeals to request an adjournment and an extension of time to file reply papers. This court denied the extension of time, finding that its scheduling order clearly indicated that FBI's reply briefs were due by March 11, 1996.

## DISCUSSION

### I. Timeliness of Appeals

■ Bankruptcy Rule 8001(a) provides in part:

> An appeal from a final judgment, order, or decree of a bankruptcy judge to a district court or bankruptcy appellate panel shall be taken by filing a notice of appeal with the clerk of the bankruptcy court within the time allowed by Rule 8002.

Bankruptcy Rule 8002(a) provides in part that "[t]he notice of appeal shall be filed with the clerk of the bankruptcy court within 10 days of the date of entry of the judgment, order, or decree appealed from." Time is calculated in accordance with Bankruptcy Rule 9006(a).[14]

The date of entry of the order challenged by appeal **96–CV–645** was Thursday, January 4, 1996. The tenth day following January 4, 1996 was Sunday, January 14, 1995. Therefore, FBI was required to file its notice of appeal by Monday, January 15, 1996. However, FBI did not file the notice of appeal for **96–CV–645** until Tuesday, January 16, 1996.

The failure to file a notice of appeal within the ten-day period is a jurisdictional defect, which requires dismissal of the appeal. *See In the Matter of Emergency Beacon Corp.*, 666 F.2d 754, 758 (2d Cir.1981) ("The failure to file a timely notice of appeal affects the jurisdiction of a reviewing court to consider the bankruptcy court's judgment or order") (contrasting with bankruptcy court's jurisdiction to modify its own order); *In the Matter of Brendan Reilly Assoc., Inc.*, 372 F.2d 235, 238 (2d Cir.1967) (holding that petitioner "waived any direct attack" upon an order by "failing to file a petition for review 'within ten days after the entry' of the order"); *In re White*, 183 B.R. 356, 358 (D.Conn.1995) ("[A] party's failure to file a timely notice of appeal deprives a district court of jurisdiction to review a bankruptcy court's final order"); *In re W.T. Grant Co.*, 425 F.Supp. 565, 566, 569 (S.D.N.Y.1976) ("the time limitations explicit in [the bankruptcy rules] must be strictly honored"), *aff'd*, 559 F.2d 1206 (1977).

As a result of FBI's untimely filing of the notice of appeal, this court lacks jurisdiction of appeal **96–CV–645.** Therefore, appeal **96–CV–645** is dismissed.

### II. Timeliness of Designations and Briefs

■ Bankruptcy Rule 8006 provides in part:

> is a Saturday, a Sunday, or a legal holiday, or ... a day on which weather or other conditions have made the clerk's office inaccessible, in which event the period runs until the end of the next day which is not one of the aforementioned days.
>
> Fed.R.Bankr.P. 9006(a).

---

**14.** When the Bankruptcy Rules require a paper to be filed within a time period eight or more days after a certain event,

[T]he day of the ... event ... or default from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included, unless it

Within 10 days after filing the notice of appeal as provided by Rule 8001(a), entry of an order granting leave to appeal, or entry of an order disposing of the last timely motion outstanding of a type specified in Rule 8002(b),[15] whichever is later, the appellant shall file with the clerk and serve on the appellee a designation of the items to be included in the record on appeal [hereinafter, "designation"] and a statement of the issues to be presented.

The date of entry of the order challenged by appeal **95–CV–4514** was Friday, September 8, 1995. The tenth day following September 8, 1995, was Monday, September 18, 1995. FBI timely filed a notice of appeal on September 18, 1995. Therefore, FBI was required to file a designation by the tenth day following September 18, 1995, which was Thursday, September 28, 1995. Although counsel for FBI, Gerard Zwirn, signed and dated the designation "September 28, 1995," the stamp of the bankruptcy court clerk reveals that the designation in appeal **95–CV–4514** was actually filed on Monday, October 2, 1995.

The date of entry of the order challenged by appeal **95–CV–4766** was Tuesday, October 17, 1995. FBI timely filed a notice of appeal on Wednesday, October 18, 1995. The tenth day after October 18, 1995 was Saturday, October 28, 1995. Therefore, FBI was required to file its designation by the tenth day following October 28, 1995, which was Monday, October 30, 1995. Although Zwirn signed and dated the designation "October 31, 1995," the stamp of the bankruptcy court clerk reveals that the designation in appeal **95–CV–4766** was actually filed on Wednesday, November 2, 1995.

The date of entry of the order challenged by appeal **96–CV–213** was Thursday, November 16, 1995. The tenth day following November 16, 1995 was Sunday, November 26,

1995. Therefore, FBI timely filed a notice of appeal on Monday, November 27, 1995. FBI was required to file a designation by the tenth day following November 27, 1995, which was Thursday, December 7, 1995. However, FBI filed a designation in appeal **96–CV–213** on Monday, December 11, 1995.

■ A paper is considered filed when it is received by the bankruptcy court. Fed. R.Bankr.P. 5005;[16] *In re Horvath,* 20 B.R. 962, 964 (Bankr.S.D.N.Y.1982). Therefore, despite Zwirn's notations, the stamps of the clerk of the bankruptcy court represent the dates on which these designations were effectively filed.

Bankruptcy Rule 8001(a) provides in part:

Failure of an appellant to take any step other than the timely filing of a notice of appeal does not affect the validity of the appeal, but is ground only for such action as the district court or bankruptcy appellate panel deems appropriate, *which may include dismissal of the appeal.*

(emphasis added).

■ Unlike the time limitations for filing a notice of appeal, the time limitations of Rules 8006 are not jurisdictional. Hence, the district court is not required automatically to dismiss the appeal of a party who has failed to meet those deadlines. *See In re Tampa Chain Co., Inc.,* 835 F.2d 54, 55 (2d Cir.1987) ("Rather, the court should exercise discretion to determine whether dismissal is appropriate in the circumstances").

■ A district court's dismissal a bankruptcy appeal for an appellant's failure to perfect the appeal is reviewed for abuse of discretion. *See id.; Nielsen v. Price,* 17 F.3d 1276, 1277 (10th Cir.1994) (no abuse of discretion where district court dismissed appeal for appellant's failure to file timely designa-

---

**15.** The motions to which Bankruptcy Rule 8002(b) refers are: a motion to amend or make additional findings of fact under Rule 7052; a motion to alter or amend the judgment under Rule 9023; a motion for a new trial under Rule 9023; and a motion for relief under Rule 9024.

Even though FBI made a motion for relief from the Bankruptcy Court's July 21, 1995 order pursuant to Rules 9023 and 9024, that motion did not affect appeals **95–CV–4514** and **95–CV–**

**4766** because the latter appeals challenged orders to enforce the July 21, 1995 order, and did not appeal the *merits* of the order.

**16.** Bankruptcy Rule 5005(a) provides generally that "The . . . papers required to be filed by these rules . . . shall be filed with the clerk in the district where the case under the Code is pending."

tion); *In re Serra Builders, Inc.*, 970 F.2d 1309, 1311 (4th Cir.1992) (same); *In re Braniff Airways, Inc.*, 774 F.2d 1303, 1305 (5th Cir.1985) (no abuse of discretion where district court dismissed appeal for appellant's failure to file timely brief).

■■■ Dilatoriness and bad faith are grounds for dismissal of an appeal under Bankruptcy Rule 8001(a). *See In re Tampa Chain Co., Inc.*, 835 F.2d at 55. "The hallmark of bad faith is the attempt to abuse the judicial process." *In re Spectee Group*, 185 B.R. 146, 155 (Bankr.S.D.N.Y.1995).

The record reveals a history of bad faith and dilatoriness on FBI's part. Bankruptcy Judge Brozman dismissed FBI's first Chapter 11 petition with prejudice and imposed sanctions on FBI's counsel, finding that FBI "had engaged in a clear pattern of using numerous litigations in different courts to increase UCC's costs and delay UCC's rightful foreclosure." *See In re French Bourekas*, 175 B.R. at 522–24. Bankruptcy Judge Hardin dismissed FBI's second Chapter 11 petition, finding the filing in bad faith. *See In re French Bourekas Inc.*, Ch. 11 Case No. 95B 21955 (S.D.N.Y. Dec. 6, 1995). This court adopts these earlier findings of dilatoriness and bad faith and re-affirms those findings based upon the litigation history in this court as outlined above.

Significant authority exists for the dismissal of bankruptcy appeals where the appellant has acted in bad faith, negligently, indifferently, or with dilatoriness. *See, e.g., In re Roma Group, Inc.*, 165 B.R. 779 (S.D.N.Y. 1994); *Adler v. Bancplus Mortgage Corp.*, 108 B.R. 435 (S.D.N.Y.1989) (finding of dilatoriness); *First National Bank of Maryland v. Markoff*, 70 B.R. 264 (S.D.N.Y.1987). Therefore, this court, in the exercise of its discretion, dismisses appeals **95–CV–4514, 95–CV–4766,** and **96–CV–213** for FBI's failure to file designations within the time specified by Bankruptcy Rule 8006.

17. FBI remained at the Premises until its eviction on November 1, 1995. Therefore, FBI owed rent from November 1994 to October 1995.

**III.  Appeal 95–CV–5388**

This is an appeal of Judge Holland's order, entered on July 21, 1995, directing FBI to pay rent from November 1994.[17] FBI contends that the order should be vacated because: (1) the filing of Lorraine's bankruptcy petition ended Turner's receivership of the Premises; (2) Turner disregarded an order of Judge Brozman and breached the Lease; and (3) the bankruptcy court lacked the authority to issue the July 21, 1995 order.

*The Continuation of the Receivership*

■■■ FBI argues that the filing of the Lorraine bankruptcy petition automatically displaced Turner from the receivership, stating that 11 U.S.C. § 105(b) "prohibits the bankruptcy judge's appointment of a receiver." FBI Br. at 42.

Section 105(b) of 11 U.S.C. provides only that "a court may not appoint a receiver *in a case under this title.*" (emphasis added). Turner was the receiver appointed by the state court in the foreclosure action, which is not "a case under" Title 11, but which was a state court action. Therefore, 11 U.S.C. § 105(b) is inapplicable.

Moreover, section 959 of 28 U.S.C. provides:

Except as provided in section 1166 of title 11,[18] a trustee, receiver or manager appointed in any cause pending in any court of the United States, including a debtor in possession, shall manage and operate the property in his possession as such trustee, receiver or manager according to the requirements of the valid laws of the State in which such property is situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof.

The New York State Supreme Court is certainly a "court of the United States." Moreover, "the provisions of 28 U.S.C. § 959(b) have always been applicable in bankruptcy matters." 1 Colliers on Bankruptcy ¶ 3.04 at 3–205 (1993). Therefore, the commencement of a bankruptcy case does

18. Section 1166 of 11 U.S.C. pertains to the effect of the Interstate Commerce Act and does not apply to this matter.

not, as FBI argues, "discontinue" a receivership.

Finally, the continuation of Turner's receivership has already been determined by three courts, including this one. Judge Brozman clearly envisioned the continuation of the receivership after FBI's bankruptcy, because her order of April 21, 1994 directed FBI to pay rent to the receiver. In addition, shortly after the commencement of Lorraine's bankruptcy petition, Lorraine and UCC stipulated to continuing Turner as the receiver for the Premises. On October 26, 1995, this court affirmed the continuation of Turner as receiver. Thus, Turner legally and unequivocally continued as receiver for the Premises throughout FBI's and Lorraine's bankruptcies.

### The "Clean Hands" Argument

FBI argues that Turner should be estopped from enforcing the rent provisions of the Lease because he failed to provide heat and hot water to the Premises. Citing some remarks from a hearing out of context, FBI argues that "[O]n April 12, 1994 Judge Brozman directed the receiver to restore services, nothing was done, and that judicial directive was defied." FBI Br. at 25.

FBI grossly misstates the terms of Judge Brozman's directive. In fact, the relevant order provided that

> [W]ithin sixty (60) days of the date of the issuance of this order, the Receiver shall fully restore the previously terminated gas services supplying heat and hot water services to [FBI], *or at the Receiver's option, shall pay [FBI]'s gas bills for heat and hot water.*

*In re French Bourekas Inc.,* Ch. 11 Case No. 93–B–43470, Order (S.D.N.Y. April 21, 1994) (emphasis added).

In a letter dated May 23, 1995, Turner requested copies of FBI's gas bills. Appellee's Additional Designation, Ex. 4. However, Turner received no documentation of gas charges from FBI. Appellee's Br. at 57–58.

Turner was obviously exercising the second of two options provided for in Judge Brozman's April 21, 1994 order and has demonstrated that he provided FBI with an adequate opportunity to produce gas bills for reimbursement. Therefore, FBI's argument that Turner "defied" Judge Brozman by failing to restore gas to the Premises is specious.

### Core and Non–Core Proceedings

FBI argues that the bankruptcy court lacked the authority to issue the July 21, 1995 order to pay rent. The argument is as follows:

1. The declaratory judgment action consists exclusively of state law causes of action.

2. Therefore, the declaratory judgment action is a non-core proceeding.

3. The bankruptcy court lacks the authority to issue final orders of relief in non-core proceedings without the express consent of the parties.

4. FBI had asserted in its June 22, 1995 reply pleading that it did not consent to the entry of final orders by the bankruptcy judge.

5. The bankruptcy court thus lacked the authority to issue final orders in the declaratory judgment action.

This court first notes that the above argument raises an interesting paradox. Bankruptcy Rule 8001(a) provides that an "appeal from a final judgment, order or decree of a bankruptcy judge to a district court" may be taken as of right, whereas Bankruptcy Rule 8001(b) and 28 U.S.C. § 158(a)(3) provide that an "appeal from an interlocutory judgment, order or decree" may be taken only by leave of the district court. Leave to appeal is obtained by filing a motion prepared in accordance with Rule 8003.

If, as FBI argues, the bankruptcy court in fact had no authority to issue final orders in the declaratory judgment proceeding, then it follows that FBI could not appeal those orders as of right. FBI has not filed a motion for leave to appeal in accordance with Bankruptcy Rule 8003. By failing to do so, FBI has, by clear implication, conceded that this is a "final order."

Assuming that this court will entertain the

appeal,[19] it must first resolve the issue of whether or not the July 21, 1995 order is a core proceeding. Section 157 of 28 U.S.C. defines "core" proceedings as those that "arise under" or "arise in" a case brought under title 11 of the United States Code. Only in core proceedings may a bankruptcy judge issue final relief.[20]

In *Beard v. Braunstein*, 914 F.2d 434 (3d Cir.1990), the Court of Appeals for the Third Circuit considered whether or not an action to recover post-petition rent based on a pre-petition lease was a core matter. In *Beard*, the bankruptcy trustee brought an adversary proceeding to recover rents from a tenant of the debtor. The tenant claimed certain set-offs, mostly because of the allegedly poor condition of the building. The bankruptcy court held the proceeding to be a core matter and tried the matter without a jury. The district court affirmed.

On appeal, the Court of Appeals for the Third Circuit reversed, reasoning that (1) an action for rent sounds in contract and is a suit at common law; (2) the remedy, money damages, is legal in nature; and (3) the trustee's action for rent therefore lay "at the 'protected core' of Article III judicial power" and could not be adjudicated by an Article I bankruptcy court. *Id.* at 438–41, 443 (*citing Granfinanciera S.A. v. Nordberg*, 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989)). The *Beard* court specifically held that even the portion of the action to recover rents that came due after the debtor's bankruptcy was non-core, since the rents accrued under a pre-petition lease. *Id.* at 444 ("This case ... is a garden variety contract claim and is not against the bankruptcy estate.").

The same grounds apply with even more force here. FBI's tenancy was based on an August 1989 lease, which pre-dated Lorraine's bankruptcy petition. Turner's counterclaim for rent sounds exclusively in contract and is not converted to a proceeding that "arises under" Title 11 merely because the underlying action has been removed to bankruptcy court. Therefore, the counterclaim pursuant to which the July 21, 1995 order was issued is a non-core matter.

*Appellate Review*

■ The fact that Turner's counterclaim for rent was non-core does not automatically render the July 21, 1995 order invalid. Rather, this court may review the order *de novo*. *See In the Matter of Campbell*, 812 F.2d 1465 (4th Cir.1987) (holding that the district court did not err in reviewing *de novo* bankruptcy court's decision in non-core proceeding).

■ Both Turner and FBI, however, suffer from confusion regarding the turnover provisions of 11 U.S.C. §§ 542 and 543. Ordinarily, a custodian of the debtor's property must deliver the property to the bankruptcy trustee upon filing of the bankruptcy petition. 11 U.S.C. § 543(b).[21] In addition, a custodian is generally prohibited from administering the property of the debtor after the filing of the bankruptcy petition. 11 U.S.C. § 543(a).[22] FBI apparently believes that the automatic turnover provisions of 11 U.S.C. § 543(a)–(b) nullify Turner's receivership, while Turner argues, incorrectly, that as the receiver for the debtor's sole asset, he has the turnover powers of a bankruptcy trustee pursuant to 11 U.S.C. § 542. Neither of these propositions is correct.

19. If a required motion for leave to appeal is not filed, the notice of appeal is regarded as a motion for leave to appeal and the district court may, in its discretion, entertain the appeal. See Bankruptcy Rule 8003(c).

20. "Bankruptcy judges may hear and determine ... all core proceedings arising under title 11, or arising in a case under title 11 ... and may enter appropriate orders and judgments, subject to review under section 158 of this title." 28 U.S.C. § 157(b)(1).

21. A custodian is required to deliver property in his possession and "proceeds, product, offspring, rents, or profits of such property" to the trustee of the bankruptcy estate. See 11 U.S.C. § 543(b).

22. The commencement of a case under the Bankruptcy Code bars a custodian of property in which the debtor has an interest from taking "any action in the administration of[ ] property of the debtor, proceeds, product, offspring, rents or profits of such property ... except such action as is necessary to preserve such property." 11 U.S.C. § 543(a).

818

■ There is no question that a receiver appointed by a state court is clearly a "custodian" within the meaning of 11 U.S.C. § 101(10);[23] *In re CCN Realty Corp.*, 19 B.R. 526, 528 (Bankr.S.D.N.Y.1982). Therefore, Turner is the custodian of Lorraine's property. However, 11 U.S.C. § 543(a) and (b) are subject to important exceptions. Subsection 543(d) of 11 U.S.C. provides that the bankruptcy court may excuse a custodian from compliance with 11 U.S.C. § 543(a) and (b) "if the interests of creditors and ... of equity security holders would be better served by permitting a custodian to continue in possession, custody, or control of such property." *See In re Dill*, 163 B.R. 221 (E.D.N.Y.1994) (listing factors which may determine whether creditors would be better served by maintaining custodian in possession of property). Therefore, 11 U.S.C. § 543 does not always operate to divest a receiver of the debtor's property.

While section 543(d) may carve out an exception from the turnover requirement, that exception does not also give a custodian who remains in possession of a debtor's property the powers of a trustee. Rather, Turner's authority to recover rents stems from state law. See 28 U.S.C. § 959.

### Turner's Custody of the Rents

■ Although the parties have focused on relatively tangential issues, the essence of this appeal is whether a pre-petition receiver may continue to collect post-petition rents generated by property of the bankruptcy estate. In order to collect rent, Turner would have to be exempted under 11 U.S.C. § 543(d) from the general turnover requirement of 11 U.S.C. § 543(b).

Two factually similar cases provide guidance. In *In re CCN Realty Corp.*, 19 B.R. 526 (Bankr.S.D.N.Y.1982), the debtor was a real estate holding company whose only asset was property which was rented to an adult nursing home. A secured creditor brought a state foreclosure action against the debtor pursuant to which a receiver for the property was appointed. There was no lease between the debtor and the adult home, nor did it appear that the debtor ever collected rent

from the adult home. The state court ordered the president and sole shareholder of the debtor to pay the receiver $8,600 per month pending a final determination as to the rental value of the debtor's property. *Id.* at 527.

The debtor subsequently filed for bankruptcy. The receiver moved the bankruptcy court for an order permitting it to remain custodian of the debtor's property and to continue collecting rent generated by it. *Id.* at 526.

The bankruptcy court observed that the debtor had no incentive to collect rents from the adult home and that the debtor's major financial goal, as a single-asset real estate holding company, was to satisfy the secured claim of its creditor. Since "the collection of rents could serve no meaningful purpose other than to be applied toward this obligation," the receiver was permitted to continue collecting rents and to hold them subject to further order of the court. *Id.* at 529.

In *In re Constable Plaza Associates, L.P.,* 125 B.R. 98 (Bankr.S.D.N.Y.1991), the debtor owned a commercial office building, a mortgage on which was given as security for a promissory note to a creditor. As additional security for the indebtedness, the debtor gave an assignment of rents for the building. After the debtor defaulted, the creditor commenced a state court foreclosure action pursuant to which a receiver was appointed for the properties. The debtor subsequently filed a Chapter 11 petition. *Id.* at 100.

One of the issues before the bankruptcy court was whether the creditor had perfected its interest in rents assigned to it "as additional security" for the mortgage. The bankruptcy court held that under New York law, the appointment of a receiver perfects a mortgagee's security interest in rents under an assignment clause. 125 B.R. at 102 (*citing Sullivan v. Rosson*, 223 N.Y. 217, 119 N.E. 405 (1918); *In re Brose*, 254 Fed. 664 (2d Cir.1918)). The issue in *Constable* was whether the rents should remain with the debtor, be turned over to the trustee, or

**23.** Section 101(11)(A) of 11 U.S.C. defines "custodian" as including a "receiver or trustee of any of the property of the debtor, appointed in a case or proceeding not under this title."

remain in the custody of the receiver.[24] Nowhere was it suggested that the debtor's bankruptcy excused a tenant from paying rent altogether.

As in *CCN Realty*, the debtor here has no incentive to collect rents, and as a single-asset real estate holding company, its chief financial goal is to satisfy the secured claim of its creditors. Unlike *Constable*, however, neither the trustee in this case nor Lorraine has attempted to recover the rents from the Premises. Therefore, this court holds that it would best serve the interest of creditors for Turner to collect past-due rent from FBI for the months November 1994 up to and including October 1995. The court therefore adopts the July 21, 1995 order of the Bankruptcy Court and directs FBI to pay $24,000 to Turner for past-due rent.

### IV. Sanctions

Bankruptcy Rule 9011(a) provides in part:

> The signature of an attorney or a party constitutes a certificate that.... to the best of the attorney's or party's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation or administration of the case.

Under this rule, the submission of a signed document creates two distinct duties on the part of an attorney or party who files papers in a bankruptcy proceeding: (1) a certification that the filing is not frivolous; and (2) a certification that the filing "is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." *See In re Marsch*, 36 F.3d 825 (9th Cir.1994). A breach of either of these duties may lead to sanctions. See Fed.R.Bankr.P. 9011(a).

The district court, sitting as a court of appeal from a bankruptcy court decision, has authority to impose sanctions for frivolous appeals pursuant to Bankruptcy Rule 9011. *See Hedges v. Resolution Trust Co.*, 32 F.3d 1360, 1364 (9th Cir.1994) (finding district court did not abuse its discretion where appellants' arguments were "wholly without merit" and counsel repeatedly failed to follow proper procedural rules unless ordered by the court), *cert. denied,* —— U.S. ——, 115 S.Ct. 1792, 131 L.Ed.2d 721 (1995). After a thorough examination of the record and of the voluminous papers submitted to this court in connection with the bankruptcies of FBI and Lorraine, this court is driven to conclude that sanctions against FBI are warranted.

This court placed FBI on notice that its papers would be examined carefully. At the January 19, 1996 status conference, this court made the following statements:

> I just want to make it just as plain as I can make it and I don't think I can make it any plainer. I'm going to examine these papers very, very carefully and if I determine that these papers and these seven proceedings all arising out of the same bankruptcy case are designed to harass and to abuse the processes of this court, again, the sanctions which I will impose will turn your heads and hopefully forever deter you from abusing the processes of either the federal court or the bankruptcy court again.

Transcript at 16.

In general, FBI has abused the bankruptcy appellate process by making a practice of appealing orders, many of which are non-final interlocutory orders, without obtaining stays of the orders as provided by Bankruptcy Rules 7062 and 8005. Although FBI filed two motions for emergency relief by way of orders to show cause, FBI's typical strategy is to ignore orders of the bankruptcy court pending appeal to this court. When the bankruptcy court found FBI in contempt of its orders, FBI compounded the abuse by appealing the bankruptcy court's contempt

---

**24.** For a variety of reasons that do not apply here, the *Constable* court held that the debtor was entitled to retain the income stream generated by its commercial rental properties. *Id.* at 106.

order without obtaining a stay. At such a rate, FBI's could continue filing appeals indefinitely, eating away at judicial resources that could be better applied elsewhere.

Even more egregiously, FBI failed to indicate that appeals 95–CV–4514 and 95–CV–4766 were interwoven with earlier appeals stemming from the bankruptcy of Lorraine, in violation of Local Civil Rule 50.3(d).[25] FBI's omission required Judge Block to discover independently that these appeals grew out of the same complicated facts that I had considered in appeals 95–CV–3137 and 95–CV–3628, which arose out of UCC's foreclosure action after it had been removed to the bankruptcy court. FBI's omission, had it remained undetected, would have squandered judicial resources through unnecessary duplication of effort.

A cursory glance at FBI's papers reveals that many of its arguments are frivolous. This court notes the following examples, which are by no means exhaustive: As noted earlier, FBI cannot reasonably argue that the order in appeal 95–CV–5388 is non-final and at the same time appeal it without filing the required motion for leave to appeal. In addition, appeal 95–CV–4766, an appeal of an order of eviction, became moot long before this court held a status conference on the appeals on January 19, 1996. Even though appeal 95–CV–4766 could serve no useful purpose after FBI's eviction on November 1, 1995, FBI refused to withdraw it, even after this court's admonition.

Moreover, FBI has repeatedly ignored orders of Judge Brozman and Judge Holland. Judge Holland indicated that the July 21, 1995 order which was the subject of appeal 95–CV–5388 was issued pursuant to 11 U.S.C. § 105.[26] Given the facts of this case, Judge Holland's July 21, 1995 order may be construed as an order to enforce Judge Brozman's orders of November 3, 1993, and April 21, 1994. Both of these orders unequivocally directed FBI to pay rent and rejected FBI's claimed setoffs. FBI's attempts to relitigate those claims before Judge Holland and before this court display a complete disregard for the court's orders.

Finally, the failure of FBI's counsel to appear at the March 22, 1996 hearing of these appeals compounds the disregard for judicial resources reflected in FBI's written submissions. This court will determine appropriate sanctions after a hearing.

## CONCLUSION

For the reasons stated above, appeals 95–CV–4514, 95–CV–4766, 96–CV–213, 96–CV–645 are dismissed and the corresponding orders of the bankruptcy court are affirmed. After reviewing the bankruptcy court's order in appeal 95–CV–5388 *de novo*, this court concludes that (1) it is in the interest of creditors to have Turner continue in possession of rents for the Premises pursuant to 11 U.S.C. § 543(d); and (2) that FBI was obligated to pay rent from November 1994 through October 1995. Counsel for FBI is directed to appear before this court for a hearing on sanctions on Friday, May 31, 1996 at 9:30 a.m.

SO ORDERED.

---

25. Local Civil Rule 50.3(d) provides in pertinent part:

> If the party filing a case believes it to be related to a prior case, whether pending or closed, the party shall so indicate on the information sheet, specifying for each such case the title and the docket number, if any.... Each attorney in a case has an ongoing duty to advise the clerk in writing upon learning of any facts indicating that his or her case may be related to any other pending case.

The relatedness of these appeals is beyond cavil. Zwirn participated in removing both the foreclosure action and the declaratory judgment action to the bankruptcy court under the pretext that they were "related to" Lorraine's Chapter 11 case and he will not be heard to profess ignorance of their interrelation.

26. Section 105 of 11 U.S.C. provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.