In re SONNAX INDUSTRIES,
INC., Debtor.

SONNAX INDUSTRIES, INC.,
Plaintiff–Appellee,

v.

TRI COMPONENT PRODUCTS CORP.,
Defendant–Appellant.

No. 955, Docket 89–5023.

United States Court of Appeals,
Second Circuit.

Argued March 28, 1990.

Decided June 25, 1990.

John R. Canney, III, Rutland, Vt. (Hull, Webber, Reis & Canney, Rutland, Vt., of counsel), for defendant-appellant.

Potter Stewart, Jr., Brattleboro, Vt. (Kristensen, Cummings, Murtha & Stewart, Brattleboro, Vt., of counsel), for plaintiff-appellee.

Before WINTER and WALKER, Circuit Judges, and MUKASEY, District Judge.*

* The Honorable Michael B. Mukasey, United States District Judge for the Southern District of New York, sitting by designation.

WINTER, Circuit Judge:

This is an appeal from a denial of relief from the automatic stay provision of 11 U.S.C. § 362 (1988). 99 B.R. 591. Appellee Sonnax Industries, Inc. ("Sonnax") filed for bankruptcy after failing to obtain relief in New York state courts from an injunction prohibiting it from soliciting business from, or conducting business with, customers of appellant Tri Component Products Corporation ("Tri Component"). Following the bankruptcy filing, Tri Component moved to modify the automatic stay to allow it to continue prosecution of its state-court claim against Sonnax and the other defendants and to file motions for contempt for violation of the state-court injunction. Because we find that we have appellate jurisdiction and that the district court did not abuse its discretion in denying relief from the stay, we affirm.

## BACKGROUND

Sonnax was founded in 1977 as a Vermont corporation engaged in the manufacture of automobile parts, particularly transmission parts. In 1986, Sonnax began to manufacture torque converter parts.

Tri Component, a New York corporation, is a full-line manufacturer and distributor of torque converter parts with annual sales in excess of $7 million. It has developed a copyrighted numbering system of the parts it sells. In November 1982, Tri Component hired Lawrence May as sales manager of its torque converter department. At some point May signed a restrictive covenant in which he agreed not to use information or knowledge gained within three years of leaving his job at Tri Component. In September 1986, May left Tri Component and shortly thereafter was hired by Sonnax as an independent sales representative.

In May 1987, Tri Component filed an action in New York state court against Sonnax, its president Neil Joseph, and May, alleging that May had breached the restrictive covenant by using confidential knowledge gained at Tri Component, including Tri Component customer lists, in his job at Sonnax. Tri Component requested not only money damages but also injunctive relief. A preliminary injunction was granted on November 30, 1987, prohibiting Sonnax from soliciting business from, or doing business with, entities who had been customers of Tri Component prior to September 1986; from distributing or otherwise using a catalog referring to Tri Component's cataloguing and parts numbering system, copyrighted material and trade secrets; and from using Tri Component's customer list. On January 15, 1988, the three defendants appealed to the Appellate Division, First Department, and thereafter moved to stay the injunction pending the appeal. The motion was denied on March 8, 1988.

The next day Sonnax filed its petition for bankruptcy in the Bankruptcy Court for the District of Vermont. After Tri Component filed its proof of claim, it moved to modify the automatic stay of 11 U.S.C. § 362 to allow it to continue prosecution of its litigation in New York courts and to enforce the injunction. The motion was transmitted from the bankruptcy court to the district court pursuant to 28 U.S.C. § 157(d) (1982 & Supp. V 1987). The district court denied Tri Component's motion. Tri Component appealed.

## DISCUSSION

### 1. *Jurisdiction*

We first address the question of appellate jurisdiction. The procedural posture of this appeal is somewhat unusual. Ordinarily, a bankruptcy court would deny the motion to lift the stay, a decision reviewable on appeal by a district court under Section 158, 28 U.S.C. § 158(a) (1988). Because Section 158 grants courts of appeals "jurisdiction of appeals from all final decisions, judgments, orders, and decrees entered under" Section 158, only a "final" decision by a district court would be reviewable by a court of appeals. *See* 28 U.S.C. § 158(d).

In this case, however, the district court was acting under Section 157(d), which authorizes district courts to "withdraw [from the bankruptcy court], in whole or in part, any case or proceeding referred

under [Section 157]." We hold that we do not have jurisdiction under Section 158, but the denial of the motion to lift the stay was a final appealable order under 28 U.S.C. Section 1291.

Section 158 grants courts of appeals jurisdiction to hear appeals from "final decisions ... entered under subsections (a) and (b) of [Section 158]." Subsections (a) and (b), however, concern only appeals heard by district courts from bankruptcy courts. Because the district court in the instant matter was exercising original jurisdiction under Section 157(d), we do not have appellate jurisdiction under Section 158. *See United States v. Nicolet, Inc.,* 857 F.2d 202, 204 (3d Cir.1988).

We nonetheless have jurisdiction under *DiPierro v. Taddeo (In re Taddeo),* 685 F.2d 24, 26 n. 4 (2d Cir.1982), although that decision has been followed in only modified fashion by other courts and has been impliedly criticized by a familiar commentator. Before addressing that criticism, we note that because we conclude that the order is final, we do not reach an issue, discussed in the margin,[1] that might otherwise complicate this case.

The standards for determining finality in bankruptcy differ from those applicable to ordinary civil litigation. The need for different standards arises from the fact that a bankruptcy proceeding is umbrella litigation often covering numerous actions that are related only by the debtor's status as a litigant and that often involve decisions that will be unreviewable if appellate jurisdiction exists only at the conclusion of the bankruptcy proceeding. *See Dubin v. Securities & Exchange Comm'n (In re Johns–Manville),* 824 F.2d 176, 179 (2d Cir.

1987). We have thus recognized that Congress intended to allow for immediate appeal in bankruptcy cases of orders that "finally dispose of *discrete disputes within the larger case." Id.* (quoting *In re Saco Local Development Corp.,* 711 F.2d 441, 444 (1st Cir.1983)). This caselaw has developed, however, in the course of reviewing decisions under Section 158(d). Our cases appear not to have addressed the question of whether the standards for determining finality under Section 158(d) apply to bankruptcy appeals under Section 1291 or whether resort must be had to the principles established in *Cohen v. Beneficial Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). We perceive nothing to be gained by creating a second set of standards—which, when painstakingly developed, might not differ significantly from those already in place under Section 158(d) —for reviewing identical cases. We therefore follow the Third Circuit in holding that decisions regarding finality under Section 158(d) apply under Section 1291. *See Nicolet,* 857 F.2d at 205.

■ We now turn to the appealability of decisions on motions to lift or modify the automatic stay. All seem to agree that orders lifting the automatic stay are final because the issue of whether the litigation in question may proceed has been resolved and because an immediate appeal by the trustee or debtor is necessary if there is to be appellate review at all. *See* 1 *Collier on Bankruptcy* ¶ 3.03(6)(e), at 3–198 (L. King 15th ed. 1990). A modest controversy continues to exist, however, with regard to orders denying motions to lift or to modify the automatic stay, because such orders

---

1. Although Section 158(a) authorizes district courts to hear appeals from interlocutory orders by discretionary leave of the district court, there is no provision for a court of appeals to review district court decisions reviewing interlocutory orders under Section 158(a). Where the district court exercises original jurisdiction under Section 157(d), review of final decisions by a court of appeals is under *28 U.S.C. § 1291. See Nicolet,* at 204. Appellate jurisdiction over interlocutory orders issued by a district court under Section 157(d) arguably exists under 28 U.S.C. § 1292(a)(1), where such an order is deemed an injunction, or under 28 U.S.C. § 1292(b), where the district court certifies a question for appeal. *See LTV Corp. v. Farragher (In re Chateaugay Corp.),* 838 F.2d 59, 62–63 (2d Cir.1988) (28 U.S.C. § 1292 applicable to interlocutory decisions by district court sitting in bankruptcy). The existence of court of appeals review of some interlocutory orders issued under Section 157(d) but not of the identical kind of order issued originally by a bankruptcy court under Section 158 might seem anomalous. *See Nicolet* at 204. However, because we conclude the order here is final, we need not address the existence or ramifications of that anomaly.

may seem not necessarily to preclude appellate review later on. The *Collier* text originally took the position that such orders are interlocutory. *See* 1 *Collier on Bankruptcy* ¶ 3.03(7)(e) (1981). However, in *DiPierro v. Taddeo (In re Taddeo)*, 685 F.2d 24, 26 n. 4 (2d Cir.1982) (citing *Vicksburg v. Henson*, 231 U.S. 259, 266–67, 34 S.Ct. 95, 97–98, 58 L.Ed. 209 (1913)), we expressly rejected the *Collier* view and stated broadly that the denial of relief from an automatic stay in bankruptcy is equivalent to a permanent injunction and is thus a final order. Other circuits have also held appeals from such denials to be reviewable by the court of appeals. *See, e.g., Nicolet*, 857 F.2d at 204–07; *Sun Valley Foods Co. v. Detroit Marine Terminals, Inc. (In re Sun Valley Foods Co.)*, 801 F.2d 186, 189–90 (6th Cir.1986); *Crocker Nat'l Bank v. American Mariner Indus., Inc. (In re American Mariner Indus., Inc.)*, 734 F.2d 426, 429 (9th Cir.1984); *Aetna Life Ins. Co. v. Leimer (In re Leimer)*, 724 F.2d 744, 745 (8th Cir.1984); *Borg–Warner Acceptance Corp. v. Hall*, 685 F.2d 1306, 1309 (11th Cir.1982).

Most circuits, however, have stopped short of adopting the broad rule that all denials of relief from the automatic stay constitute final, appealable orders. In *Nicolet*, for instance, the Third Circuit held that the particular denial met "the required indicia for finality," 857 F.2d at 206, but indicated that not all orders denying relief from the automatic stay were appealable. *See id.* at 206 n. 2 (citing *In re West Electronics Inc.*, 852 F.2d 79, 81–82 (3d Cir.1988); *Moxley v. Comer (In re Comer)*, 716 F.2d 168, 174 & n. 11 (3d Cir.1983)). The *Comer* decision was also critical of the *Collier* position but on grounds different from those expressed in *Taddeo*. *Comer* "caution[ed] that in some instances a permanent injunction that did not dispose of all the matters at issue might not be final under section 1291." 716 F.2d at 174. *Comer* noted nevertheless that on the facts of that case the order denying relief "be-

came the law of the case in that court and resulted in a diminution of the creditors' secured debt." Moreover, the court stated that "[c]reditors were precluded from foreclosing on their mortgages and the effect of the order, therefore, was to make a reorganization possible at the expense of the creditors' interests." *Id.* Finally, the court concluded that "review which sufficiently protects the party's rights cannot be had at the close of the bankruptcy proceedings." *Id.*

Noting that many courts have concluded "that determinations granting or denying relief from the automatic stay are final decisions," 2 *Collier on Bankruptcy* ¶ 362.13, at 362–80 (L. King 15th ed. 1990) (citing *West Electronics*, 852 F.2d at 79; *Crocker*, 734 F.2d at 426; *Leimer*, 724 F.2d at 744; *Comer*, 716 F.2d at 168), the *Collier* text modified its position. It now states:

[i]t may very well be that whether an order refusing to lift a stay is interlocutory or final will depend upon the reason for the court's order. If ... the court refuses to lift the stay because it finds that the moving party does not have an interest in the property ..., the litigation between the parties has been finally determined and there is nothing further for the court to do. On the other hand, if the court were to find that there was an equity cushion in the property or for another reason the creditor was adequately protected, the creditor would be free to renew its request for relief from the stay at a later time in the case, and the requisite complete and final determination of the rights between the parties would not have been accomplished. In that situation, such an order can readily be held to be interlocutory.

1 *Collier on Bankruptcy* ¶ 3.03(6)(e), at 3–199 to 200 (citing *Nicolet*, 857 F.2d at 206).

Although the denial of the motion to lift the stay in the instant case might be final under the *Collier* analysis,[2] we believe that

---

**2.** The factors enunciated in *Comer* and the revised *Collier* text are arguably present. The effect of the denial of relief from the stay is to

prevent Tri Component from seeking enforcement of an injunction. Injunctive relief is premised in part on a showing of irreparable

analysis is flawed. Allowing jurisdiction to turn on the reasons given for declining to lift the stay assumes those reasons are correct. For example, *Collier* offers as illustrations denials of relief from the stay on the grounds that an adequate equity cushion exists or that the creditor is otherwise adequately protected. However, if the court erred and if there is in fact insufficient equity cushion or lack of other protection for the creditor, the lack of an appeal from the denial of a motion will render the right to renew the motion later irrelevant. The *Collier* rule thus merges jurisdictional considerations with the merits. The jurisdictional ruling will necessarily require a full briefing of all issues and consume as much judicial resources as an appeal. The purpose of the finality rule, judicial economy, will not be served by the *Collier* analysis.

Nor do we perceive in decisions such as *Nicolet* and *Comer* an approach that serves the purpose of judicial economy. Each seems to require an analysis that goes to the underlying merits concerning protection for the creditor. Such a rule will not deter parties who believe themselves injured by the automatic stay from appealing denials of motions to lift it. Once the appeal is taken, the appellate court will not be able to dispose of it without some consideration of the merits, and that consideration may well be confused by the merger of jurisdictional and substantive issues. We thus conclude that any approach short of *Taddeo* is likely to be wasteful of judicial resources. Moreover, we reaffirm our confidence in the *Taddeo* analogy between the automatic stay and a permanent injunction. The stay seems to us to be the equivalent of such an injunction where the district court retains the power to modify as circumstances dictate.

### 2. The Merits

We turn now to the merits. Section 362 of the Bankruptcy Code provides that a bankruptcy petition "operates as a stay, applicable to all entities," of the commence-

ment or continuation of judicial proceedings against the debtor. *See* 11 U.S.C. § 362(a)(1) (1988). Subsection (d) of Section 362, provides as follows, however:

On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay ...

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or

(2) with respect to a stay of an act against property under subsection (a) of this section, if—

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization.

11 U.S.C. § 362(d) (1988).

■ Because the instant case concerns a stay of a judicial proceeding, only Section 362(d)(1) is applicable. The burden of proof on a motion to lift or modify the automatic stay is a shifting one. Section 362(d)(1) requires an initial showing of cause by the movant, while Section 362(g) places the burden of proof on the debtor for all issues other than "the debtor's equity in property," 11 U.S.C. § 362(g)(1). *See 2 Collier on Bankruptcy* ¶ 362.10, at 362–76. If the movant fails to make an initial showing of cause, however, the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection.

■ Neither the statute nor the legislative history defines the term "for cause" and the legislative history gives only very general guidance. The Senate Report thus states:

The lack of adequate protection of an interest in property is one cause for relief, but is not the only cause. Other causes might include the lack of any connection with or interference with the pending bankruptcy case. Generally, proceedings in which the debtor is a fiduciary, or involving postpetition activities of the debtor, need not be stayed because they bear no relationship to the purpose

injury, and the inability to enforce that injunction may thus impose losses upon Tri Compo-

nent that cannot be remedied by lifting the automatic stay sometime in the future.

of the automatic stay, which is protection of the debtor and his estate from his creditors.

S.Rep. No. 989, 95th Cong., 2d Sess. 52, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5838. Other legislative history indicates that the "facts of each request will determine whether relief is appropriate under the circumstances." H.R.Rep. No. 595, 95th Cong., 2d Sess. 343–44, *reprinted in* 1978 U.S.Code Cong. & Admin.News 6300.

In summarizing the caselaw under Section 362, *Collier* also mentions only a few specific circumstances amounting to "cause." It thus states:

> Actions which are only remotely related to the case under title 11 or which involve the rights of third parties often will be permitted to proceed in another forum. Generally, proceedings in which the debtor is a fiduciary or which involve the postpetition activities of the debtor need not be stayed since they bear no real relationship to the purpose of the stay which is to protect the debtor and the estate from creditors. Where the claim is one covered by insurance or indemnity, continuation of the action should be permitted since hardship to the debtor is likely to be outweighed by hardship to the plaintiff. Finally, the liquidation of a claim may be more conveniently and speedily determined in another forum.

> No specific mention is made of lack of prospects for rehabilitation, a common ground for vacating stays of foreclosure under the Act, though this factor relates to the prospects of an "effective" reorganization within section 362(d)(2)(B). Several changes elsewhere in the Code should reduce the importance of, but not eliminate this ground. . . .

> In extreme cases a finding that the bankruptcy case was not commenced in good faith has been used as a basis for vacating or annulling the automatic stay.

2 *Collier on Bankruptcy* ¶ 362.07(3), at 362–65 to –67 (footnotes omitted).

*In re Curtis*, 40 B.R. 795 (Bankr.D.Utah 1984), catalogued a dozen factors to be weighed in deciding whether litigation should be permitted to continue in another forum. These are: (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms. *See id.* at 799–800.

As one might anticipate from the unstructured nature of the issue, existing caselaw indicates that the "decision of whether to lift the stay [is committed] to the discretion of the bankruptcy judge," *see Holtkamp v. Littlefield (In re Holtkamp),* 669 F.2d 505, 507 (7th Cir.1982); *Rich v. Maryland Nat'l Bank,* 42 B.R. 350, 354 (D.Md.1984), and that we may overturn a denial of a motion to lift the automatic stay only upon a showing of abuse of discretion. *Holtkamp,* 669 F.2d at 507.

We believe four of the *Curtis* factors are relevant to the instant case: (1) whether the New York proceeding is connected to or might interfere with the bankruptcy case; (2) whether the bankruptcy petition was filed in bad faith; (3) the balance of harms; and (4) the interests of judicial economy and the expeditious and economical resolution of litigation.

With regard to factor (1), it is undeniable that the state-court proceeding is connected to, and would interfere with, the bankrupt-

cy case. As the district court stated, the two matters were "inextricably intertwined." The state-court injunction bars Sonnax from doing business with any customers of Tri Component, its chief competitor, a prohibition that may have a drastic impact on a company in a narrow market.

Tri Component cannot avail itself of the second factor because it has failed to show bad faith. Tri Component relies on *In re Little Creek Development Co.*, 54 B.R. 510 (Bankr.N.D.Tex.1985), in contending that Sonnax's filing of the bankruptcy petition "to obtain relief which the party could not obtain in a state court judicial proceeding constitutes bad faith." However, although neither party has noted it, the Fifth Circuit reversed the *Little Creek* decision. *Little Creek Development Co. v. Commonwealth Mortgage Corp. (In re Little Creek Development Co.)*, 779 F.2d 1068 (5th Cir.1986). Although conceding that the lack of good faith may constitute cause under Section 362, the court held that a bankruptcy filing intended in part to gain relief from a state-court action does not necessarily constitute bad faith. *See id.* at 1073. *Little Creek* stated that a finding of bad faith under Section 362 usually requires a single-asset debtor or the absence of a going concern. *See id.* at 1072. Certainly, in such circumstances the bankruptcy filing may have as its only purpose a hope to relitigate a state court action. In the instant case, however, the state-court injunction, as Tri Component well knew, had the potential of transforming a going concern with other creditors into a dead competitor. So far as can be told on the present record, Sonnax faced the very real threat of being driven out of its market and filed the bankruptcy petition as a last resort. We conclude that the district court correctly found that Tri Component had failed to carry its burden in showing bad faith as cause for lifting the stay.

The third factor, the balance of harms, also supports the district court's decision. Whether or not the district court was correct in finding that Tri Component would not suffer a real hardship if the stay remained, the lifting of the stay might doom Sonnax's attempts to reorganize. While the state-court injunction would prevent Sonnax from doing much of its usual business, the stay permits both parties to compete. Counsel agree, moreover, that the Chapter 11 stay does not deprive Tri Component of the right to proceed against the other defendants, Joseph and May. The balance of harms therefore weighs in favor of Sonnax.

Fourth, the interests of judicial economy and the speedy and economical determination of litigation support a denial of relief from the stay. As became clear at oral argument, the litigation in state court has not progressed even to the discovery stage. We therefore agree with the district court that the bankruptcy proceeding provides a single, expeditious forum for resolution of the disputed issues between Sonnax and Tri Component.

Tri Component relies on two cases that are easily distinguishable. The first, *In re Cinnabar 2000 Haircutters, Inc.*, 20 B.R. 575 (Bankr.S.D.N.Y.1982), holds that Chapter 11 should not be used to avoid a permanent injunction issued as part of a judgment entered before the bankruptcy petition. We need not address the merits of that proposition because it does not affect our conclusion. No judgment has been entered in the state litigation; discovery has not begun; and the injunction is a preliminary injunction—albeit with potentially draconian effects—that the appellate division merely declined to stay.

The other case urged on us by Tri Component, *Rudaw/Empirical Software Prods. Ltd. v. Elgar Electronics Corp. (In re Rudaw/Empirical Software Prods. Ltd.)*, 83 B.R. 241 (Bankr.S.D.N.Y.1988), holds that in some circumstances a court may lift the stay so the creditor may proceed with contempt proceedings. In *Rudaw*, the creditor, Elgar, sought relief from the stay in order to commence contempt proceedings against the debtor, Rudaw, in California state court for violation of a prepetition order preliminarily enjoining Rudaw from competing with Elgar in a particular computer software market. The facts of *Rudaw* are therefore somewhat similar to this case. The court in *Rudaw* held that

[a] state court prepetition order which does not relate to the collection of prepetition claims or property of the estate may be enforced by contempt proceedings against a debtor and its officers in order to vindicate the dignity of the state court without violating the automatic stay. The automatic stay .... may not be used as a shield to sanction contumacious conduct in violation of a prepetition order enjoining a debtor from violating a party's property rights. Thus, where the terms of the order in question are specific and unambiguous, such order may be enforced by a contempt proceeding notwithstanding the fact that the contemnor is a debtor under the Bankruptcy Code.

*Id.* at 247 (citations omitted). The *Rudaw* court thus permitted contempt proceedings to proceed where the prepetition order was not related to property of the estate and when the order was specifically tailored to protect carefully defined property rights. The circumstances in the instant case are somewhat different. First, the prepetition order in the instant case states:

> [T]he defendants are directed to deposit with ... the receiver appointed by this Court, all customer lists, customer related information, trade secrets, or any data or documents belonging to plaintiff Tri Component.

Whether or not these items were in the possession of Sonnax rightly, they are undeniably "claims or property of the estate" within the meaning of *Rudaw.* Second, the injunction in this case is not specifically tailored to particular property rights of Tri Component. Instead, it enjoins Sonnax "from ... soliciting business from or doing business with torque converter parts customers of Tri Component." Whereas the order in *Rudaw* enjoined the debtor from developing a particular product it had apparently pirated, Sonnax was prevented in the instant case from selling any products to any customers of Tri Component, whether or not the sales were shown to have resulted from a breach of May's contract.

At best, *Rudaw* demonstrates that the inquiry called for by motions to lift the automatic stay are very fact-specific and involve the weighing of numerous factors peculiar to the particular case. Necessarily, broad discretion is accorded to bankruptcy and district courts, and other decisions are useful far more for general guidance than as binding precedents.

Finally, Tri Component argues that the policies behind 28 U.S.C. § 1481 (1982 & Supp. V 1987), prohibit a bankruptcy court from enjoining another court. The statute provided that

> [a] bankruptcy court shall have the powers of a court of equity, law and admiralty, but may not enjoin another court.

28 U.S.C. § 1481. However, Congress repealed this provision in 1984, and, in any event, the automatic stay provision operates by act of Congress rather than specific action by the bankruptcy court.

Because the lifting of the stay is committed to the sound discretion of the court and because Chief Judge Billings properly considered the factors determining cause, we must affirm his denial of relief from the stay.

Affirmed.