**In re John A. DEEP, Debtor.**

**In re AbovePeer, Inc., Debtor.**

**In re BuddyUSA, Inc., Debtor.**

**Nos. 02–11552, 02–11745, 02–11755.**

United States Bankruptcy Court, N.D. New York.

June 18, 2002.

E. Lisa Tang, Thuillez, Ford, Gold & Johnson, LLP, Albany, NY, for debtors.

Terence J. Devine, DeGraff, Foy, Holt–Harris, Kunz & Devine, LLP, Albany, NY, Russell J. Frackman, Mitchell, Silberberg & Knupp, LLP, Los Angeles, CA, David Kendall, Williams & Collolly, Washington, D.C., Adam Shaw, Boies, Schiller & Flexner, LLP, Albany, NY, for movants.

Kim F. LeFebvre, Assistant United States Trustee, Albany, NY, United States Trustee.

## MEMORANDUM DECISION & ORDER

ROBERT E. LITTLEFIELD, Jr., Bankruptcy Judge.

The matter before the court is a motion filed by several parties. The Movants seek relief from the automatic stay under 11 U.S.C. § 362(d) in the Chapter 13 case of John A. Deep ("Debtor") and in the Chapter 11 cases of AbovePeer, Inc. and BuddyUSA, Inc. (together, "Corporate Debtors" and, collectively with Deep, "Debtors") to the extent necessary to permit them to seek the issuance of a preliminary injunction in the pending Multidistrict Litigation in the United States District Court for the Northern District of Illinois ("MDL actions" and the "MDL Court"). If a preliminary injunction is granted, they also want stay relief that permits it to be enforced to the extent and in the manner that the MDL Court determines to be necessary and appropriate. The court has jurisdiction over this core proceeding pursuant to 28 U.S.C. §§ 157(a), 157(b)(1), 157(b)(2)(G) and 1334(b).

### Facts

The court finds the following facts:

## I. History Before the Bankruptcy Filings

On April 30, 2001, the Corporate Debtors commenced declaratory relief actions in the United States District Court for the Northern District of New York ("N.D.N.Y. Court") against some of the Movants, seeking a determination that Aimster/Madster ("Aimster"), an online service for which AbovePeer, Inc. provides internet support and other services and which licenses certain encryption technology that BuddyUSA, Inc. developed and owns, is not an "infringing system." Less than one month later, on May 24, 2001, the Movants[1] commenced actions against the Debtors in the Southern District of New York ("S.D.N.Y."). In general, their actions sought injunctive relief and damages for the Debtors' alleged infringement of the Movants' copyrighted works.

On May 30, 2001, the Movants who were part of the N.D.N.Y. Court litigation, sought, unsuccessfully, a dismissal or change of venue to the S.D.N.Y. and/or a stay of the N.D.N.Y. litigation pending resolution of the S.D.N.Y. actions. The N.D.N.Y. Court denied their dismissal/transfer of venue/stay motion and enjoined them from prosecuting or participating in the S.D.N.Y. actions.[2]

The Movants who were part of the N.D.N.Y. litigation were barred from doing anything other than participate in that litigation, but the other Movants were not. Although it is not clear to the court the exact manner and circumstances regarding when or how it happened, a large portion of all of the pending litigation[3] was placed before the Judicial Panel on Multidistrict Litigation ("MDL Panel"). The Debtors opposed centralization of the various actions, however, they conceded that if the MDL Panel determined it was appropriate, they would support the N.D.N.Y. Court as the transferee district. (Declaration of Karin G. Pagnanelli Ex. 2 ("*Transfer Order*"), p. 1.)

The MDL Panel found consolidation would "serve the convenience of the parties and witnesses and promote the just and efficient conduct of [the Aimster litigation]." *Transfer Order*, p. 2. Regarding the selection of the transferee district, the MDL Panel concluded the Northern District of Illinois was a convenient, central forum. *Id.* Regarding Judge Aspen, the judge assigned to handle the litigation, the MDL Panel remarked, "we are assigning this litigation to a judge who is highly experienced in complex litigation and whose caseload burden is favorable to accepting this assignment." *Id.*

It was not until sometime in December 2001, when consolidation occurred and Judge Aspen was in place, that the Movants began their pursuit of a preliminary injunction against Aimster's operation. According to the Movants, their motion for a preliminary injunction included extensive declarations, exhibits and a memorandum of law. They state they did not seek to shut the Aimster system down completely, rather, they only sought to stop the Debtors from allegedly operating unlawfully and infringing on their copyrights. They

---

1. A large number of plaintiffs exist in the various cases that make up the MDL actions. The court has not conducted a side by side comparison to see how much overlap actually exists amongst the various lawsuits.

2. *Abovepeer, Inc. v. Recording Industry Ass'n of America, Inc.*, 166 F.Supp.2d 655, 662–663 (N.D.N.Y.2001).

3. As time elapsed, more actions involving Aimster were filed in the N.D.N.Y., the Central District of California, the Middle District of Tennessee and Southern District of Florida.

believe that if the relief they seek from Judge Aspen is granted and an injunction is issued, Aimster would be able continue to operate, provided, of course, it does not infringe on the Movants' copyrights.

On January 22, 2002, the Debtors filed opposition to the preliminary injunction motion, including a memorandum of law, declaration and exhibits. The opposition contested the issue of infringement on various grounds, including the Digital Millennium Copyright Act (17 U.S.C. § 512) and the Audio Home Recording Act of 1992 (17 U.S.C. §§ 1001 et seq.). The Movants filed their reply briefs and declarations on February 5, 2002. Shortly thereafter, the Debtors were permitted to file a supplemental declaration. It appears that the matter is now fully briefed.

On January 24, 2002, Judge Aspen scheduled a status conference for March 14, 2002, which was later rescheduled for March 19, 2002, at which time the parties were asked to be prepared to discuss the preliminary injunction motion and a case management plan. Both the Movants and the Debtors have filed proposed case management plans, however, the Movants have not clearly conveyed what would occur (or would have occurred) during Judge Aspen's status conference. According to the Debtors' MDL counsel, the status conference would only involve setting a hearing for a determination on the merits of the preliminary injunction request. (Tr. 31.) Debtors' bankruptcy counsel has suggested the MDL Court would need to resolve issues of fact, perhaps involving expert testimony, before it could determine whether a "likelihood of success of the merits" exists. (Tr. 34–36; 41.) Movants' counsel, however, has stated, "We are on the verge, as soon as Judge Aspen will hear it, of having the motion heard without anything more" and "[w]ith respect to evi-

dentiary hearings and experts, we've passed all that." (Tr. 39.) It the Movants' counsel's "understanding" that Judge Aspen's procedure is "not to have evidentiary hearings." (Tr. 39.)

## II. The Debtor's Chapter 13 Case

The Debtor filed a Chapter 13 petition on March 11, 2002, approximately one week before the status conference. On March 11, 2002, via a letter to Judge Aspen, the Debtor's attorney requested a stay of the MDL Actions, indicating his filing stayed the MDL Actions. Judge Aspen did not adjourn the status conference.

The Debtor then sought and obtained an order to show cause from this court, requiring the Movants' counsel to appear and to show cause why the automatic stay should not be extended to the Corporate Debtors, who had not filed at that time, and, if successful, enjoining continuation of the Aimster litigation in the MDL Court. After the court conducted a hearing on March 18, 2002, it declined to extend the automatic stay.

## III. The Corporate Debtors' Chapter 11 Cases

On March 18 and 19, 2002, the Corporate Debtors filed Chapter 11 petitions. It was not until May 1, 2002, however, that the Movants filed the instant motion for relief from the automatic stay. They chose May 23, 2002 as the return date.

At the May 23rd hearing, the court heard the arguments of both sides, asked questions of both parties' counsel and informed everyone that it would issue a written decision. A transcript of that hearing has been filed in the Chapter 13 case.[4]

---

4. For some unknown reason, the transcript shows a hearing date of May 28, 2002.

## Discussion[5]

Section 362 of the Bankruptcy Code provides that a bankruptcy petition "operates as a stay, applicable to all entities" of the commencement or continuation of judicial proceedings against the debtor. 11 U.S.C. § 362(a)(1). Subsection (d) provides, however, as follows:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay . . .
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest; [or]
>
> (2) with respect to a stay of an act against property under subsection (a) of this section, if—
>
> (A) the debtor does not have an equity in such property; and
>
> (B) such property is not necessary to an effective reorganization . . .

■ The party seeking relief from the automatic stay must make an initial showing of cause under section 362(d)(1), and, if cause is shown, section 362(g) places the burden of proof on the debtor or trustee, except for the issue of the debtor's equity in property. *Sonnax Indus., Inc. v. Tri Component Prod. Corp. ("In re Sonnax")*, 907 F.2d 1280, 1285 (2d Cir.1990); 11 U.S.C. § 362(d)(1). Absent a showing of cause, the bankruptcy court should simply deny the motion. *Id.; In re Mazzeo*, 167 F.3d 139, 142 (2d Cir.1999) (citing *In re Boodrow*, 126 F.3d 43, 48 (2d Cir.1997)). Without an initial showing of cause, there is no requirement that the debtor show entitlement to continued protection. *In re Sonnax*, 907 F.2d at 1285.

■ The Second Circuit has set forth a list of a dozen factors that may be relevant in deciding whether the stay should be lifted so litigation can continue in another forum. These are:

(1) whether relief would result in a partial or complete resolution of the issues;

(2) lack of any connection with or interference with the bankruptcy case;

(3) whether the other proceeding involves the debtor as a fiduciary;

(4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;

(5) whether the debtor's insurer has assumed full responsibility for defending it;

(6) whether the action primarily involves third parties;

(7) whether litigation in another forum would prejudice the interests of other creditors;

(8) whether the judgment claim arising from the other action is subject to equitable subordination;

(9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;

(10) the interests of judicial economy and the expeditious and economical resolution of litigation;

(11) whether the parties are ready for trial in the other proceeding; and

(12) impact of the stay on the parties and the balance of harms.

*In re Mazzeo*, 167 F.3d at 142–143 (citing *In re Sonnax*, 907 F.2d at 1286). However, all 12 factors may not be relevant in a given case. *In re Mazzeo*, 167 F.3d at 143.

■ The Movants urge the court to consider four factors: the harm to them, the interests of judicial economy, the existence of an alternative forum and the impact granting the motion would have on the

---

5. The court has combined the parties' arguments with what it usually sets forth as a separate part of its decision in which it discusses the applicable law.

Debtors' reorganization efforts.[6] (Memorandum of Points and Authorities in Support of Motion for Relief from the Stay p. 7.) Turning to the 12 factors the Second Circuit has catalogued, the court concludes that only two, the interests of judicial economy and the expeditious and economical resolution of litigation and the balance of harms, weigh in favor of granting the Movants' motion. The other ten are either inapplicable or, because they can be answered in the negative, arguably weigh more favorably toward not lifting the stay.

Factors 3, 5, 6, 8 and 9 are not relevant here. Factor 1, whether partial or complete resolution of the issue would result if the stay were lifted, could have weighed in the Movants' favor since they did limit the issue the MDL Court would hear, i.e., their preliminary injunction request only. However, when all of the other matters that court was given jurisdiction over are also considered (e.g., discovery matters, other pre-trial motions), neither "partial" nor "complete" resolution could result.

Factor 2, lack of interference with or connection to the bankruptcy case, also does not exist here. In fact, the litigation itself will likely be at the very heart of the Corporate Debtors cases since the Aimster system appears to be, at least at this early stage of each case, what keeps each of their business operations going. Factor 7, whether litigation in another forum would prejudice the interests of other creditors, weighs more favorably toward the Debtors. Not only would the Debtors' creditors lack standing in the MDL forum, they are at a distance considerably removed from its situs.

Factor 11 clearly does not exist since the lift stay relief requested only involves the preliminary injunction request, nowhere near an actual trial on the alleged copyright infringements. While factor 4, whether a specialized tribunal with the necessary expertise has been established to hear the cause of action, seems to apply, the finding of the MDL Panel was that Judge Aspen is "highly experienced in complex litigation" and has a "caseload burden [that] is favorable to accepting this assignment." The panel did not make any specific finding regarding his expertise in copyright law; it also did not indicate that he has handled any cases involving Title 17. Thus, the cases the Movants cite on page 10 of their memorandum of law are distinguishable in that those cases involved specialized courts or tribunals or courts that routinely adjudicated the type of issues that received lift stay treatment.

That leaves factors 10 and 12. This court must certainly consider "the interests of judicial economy and the expeditious and economical resolution of litigation" as well as "the impact of the stay on the parties and the balance of harms" in these three cases. To have the MDL Court decide the preliminary injunction motion as a matter of law, particularly since the matter has been fully briefed since February 2002, would serve the interests of judicial economy and expedite the resolution of key litigation between the Debtors and Movants. Furthermore, if the only "hearing" the MDL Court would conduct is oral argument on the motion, then it would appear the most "economical" resolution would also be to allow Judge Aspen to issue his ruling on the Movants' request.

The record the Movants have created, however, does not support an outright

---

**6.** These four seem to come from a law review article the Movants have cited. The article is entitled "Protecting Technology and Intellectual Property Rights When a Debtor Infringes on Those Rights" and can be found at the following cite: 8 AM.BANKR.INST.L.REV. 349 (2000).

finding that Judge Aspen's hearing will only involve oral argument, i.e., that he can rule, without the need for an evidentiary hearing, on the preliminary injunction request as a matter of law. As for the balance of harms, that factor would also weigh in the Movants' favor because if they needed to proceed with a preliminary injunction request in this court to stop the alleged infringements, the vehicle for obtaining that would be an adversary proceeding pursuant to Fed.R.Bankr.P. 7001(7). That has not been commenced yet. Thus, if the Debtors are actually committing copyright infringement, harm to the Movants, and even to the estate due to the potential administrative expenses that would also be accruing, would continue. Since the Debtors can only use property of the estate in a lawful manner and they agree that the question of copyright infringement must be resolved by some court, potential harm to the Debtors does not weigh as heavily.[7]

The issue of whether the Debtors are infringing on the Movants' copyrights, the very question of existing and continual harm to the Movants, must be decided by some court. This court concludes the Movants have shown cause for a lifting of the automatic stay to allow them to pursue their request for a preliminary injunction from the MDL Court, provided the MDL Court can decide the request without any evidentiary hearings.[8] Having determined that "cause" exists, the burden has shifted to the Debtors. *In re Mazzeo,* 167 F.3d at 142.

The Debtors primarily argue they will face increased expenditures if the MDL Court were to decide the preliminary injunction motion instead of this court. Regarding that argument, this court notes its agreement with the line of cases where the courts have held, "the cost of defending litigation, by itself, has not been regarded as constituting 'great prejudice,' precluding relief from the automatic stay." *In re Anton,* 145 B.R. 767, 770 (Bankr.E.D.N.Y.1992) (quoting *In re Unioil,* 54 B.R. 192, 195 (Bankr.D.Colo.1985)); *See In re Keene Corp.,* 171 B.R. 180, 185 (Bankr.S.D.N.Y.1994). Even Debtors' argument that the bankruptcy court is the "unified forum" where the applicable laws and rules provide for a "unique substantive and procedural basis by which a speedy determination can be reached ... while balancing the interests of creditors ..." does not create enough momentum to shift the burden back to the Movants. The court has already determined that all three estates would be better off economically if the MDL Court can, in fact, determine the preliminary injunction matter without any hearings other than oral argument, with judicial expediency providing a further benefit to the estates and all creditors.

Finally, with regard to the Debtors' argument about convenience to the parties, the court agrees that the Movants are clearly inconvenienced by having to conduct the pretrial litigation of the MDL actions in Chicago, therefore, it is hardly more inconvenient to conduct the pretrial litigation here. That is one of the reasons why the court has already indicated that

---

7. This is different from the facts in *Sonnax* because a preliminary injunction already existed when the debtor in that case filed. *In re Sonnax,* 907 F.2d at 1282. The debtor needed the automatic stay to apply to the state court injunction in order to reorganize. *Id.* at 1287. Thus, the Second Circuit concluded that the bankruptcy court did not abuse its discretion when it determined the balance of harm factor weighed in favor of keeping the automatic stay in place so that the state court's decision to enjoin the debtor could not "doom [the debtor's] attempts to reorganize."

8. This relief is different, albeit slightly, from the relief requested by the Movants.

the only matter the MDL Court can consider is the preliminary injunction request, provided, however, that any additional hearings only involve conferences regarding or oral argument of the merits of the Movants' request.

Accordingly, it is

ORDERED that the Movants' motion to lift the automatic stay is granted for the limited purpose of permitting them to request the MDL Court to issue its decision on the pending preliminary injunction motion, without any further hearings other than oral argument of or conferences regarding the merits of the motion; and it is further

ORDERED that the MDL Court may render its decision and enforce any of its terms, provided they are consistent with the terms of this order and the provisions of Title 11.