**In re Kenneth H. GODT, Debtor.**

**In re Siegel & Godt, P.C., Debtor.**

**Nos. CV–01–6517(ADS)(ARL), CV–01–6516(ADS)(ARL).**

United States District Court, E.D. New York.

Sept. 10, 2002.

Pryor & Mandelup, LLP, by Anthony F. Giuliano, of Counsel, Westbury, NY, for Debtor–Appellants Kenneth H. Godt and Siegel & Godt, P.C.

Jeffrey Levitt, Amityville, NY, for Appellees Alan Ring and Victoria Rich Individually and as Co–Executors of the Estate of Sylvia Ring and as Co–Trustees of the Sylvia Ring Family Trust.

## ORDER

SPATT, District Judge.

The appellants Kenneth H. Godt ("Godt") and Siegel & Godt, P.C. ("S & G") (collectively, the "appellants"), both debtors in two separate pending Chapter 7 proceedings, appeal from two orders dated August 24, 2001 and August 30, 2001 by United States Bankruptcy Judge Dorothy Eisenberg, lifting the automatic stay pursuant to 11 U.S.C. § 362, allowing the appellees Alan Ring and Victoria Rich (collectively, the "appellees") to proceed with their claim for malpractice against the appellants in state court.

## I. BACKGROUND

On October 5, 1999, Godt and his law firm S & G filed voluntary petitions pursuant to Chapter 7 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court"). *In re Siegel & Godt, P.C.,* No. 899–88308–478 (Bankr.E.D.N.Y. Oct. 5, 1999); *In re Kenneth H. Godt,* No. 899–88309–478 (Bankr.E.D.N.Y. Oct. 5, 1999). On December 8, 2000, the appellees, individually and as co-executors of the Estate of Sylvia Ring and as co-trustees of the Sylvia Ring Family Trust, filed a complaint in New York State Supreme Court, Nassau County against Godt, S & G, Kenneth H. Godt & Associates (Godt's post-petition law firm), Barry B. Seidel and Marks Paneth & Shron, LLP (accountants) alleging malpractice in that they failed to properly prepare and provide advise in connection with the will and trust of Sylvia Ring (the "Will and Trust"). The complaint alleges that from December 6, 1996 until the death of Sylvia Ring on February 27, 2000, Godt, S & G and Kenneth H. Godt & Associates rendered legal services to the appellees in relation to the Will and Trust. The appellees sought damages in the sum of $380,667.

On March 23, 2001, the appellees filed a proof of claim against the appellants in the Bankruptcy Court. The appellees noted that the basis of their claim was the malpractice action and the amount of the claim was $380,667. On May 31, 2001, the appellees moved in the Bankruptcy Court for an order lifting the automatic stay to pursue their malpractice action in state court. In their counsel's affidavit, the appellees gave the following reasons to lift the automatic stay: (1) the state action involved matters which occurred both before and after the appellants' filed for bankruptcy; (2) the claims in the state action involved the mishandling of a trust agreement; (3) the appellants conceded malpractice in a letter dated October 11, 2000; (4) Kenneth H. Godt Associates, Barry B. Seidel and Marks Paneth & Shron, LLP appeared and filed answers in the state action; (5) the matters in the state action involved issues of state law which should be heard by a state court; and (6) if the automatic stay was not vacated, the appellees will be faced with proceedings in two separate jurisdictions with overlapping issues and possible inconsistent verdicts.

By opposition dated July 9, 2001, the appellants stated that: (1) the state action against the appellants was commenced in violation of the automatic stay provisions of 11 U.S.C. § 362; (2) the acts alleged in the state complaint took place before the petitions in Bankruptcy Court were filed; and (3) the appellees failed to establish any reason why they were entitled to relief from the automatic stay. By reply dated July 11, 2001, the appellees again argued that the state action involved matters before and after the appellants filed for bankruptcy. Also, the appellees stated that the appellants intended to seek contribution and indemnification from another law firm Busell & Stier, PLLC that represented the Estate of Sylvia Ring for alleged matters that arose after the bankruptcy petition. In support of this argument, the appellees attached a letter dated July 13, 2001 that Godt, on his post-petition law firm's letterhead, sent to Busell & Stier, PLLC which referred to Godt's October 11, 2000 letter that allegedly conceded malpractice in connection with the will and trust of Sylvia Ring.

By response dated August 6, 2001, the appellants submitted an affidavit arguing that the letter dated October 11, 2000 submitted by the appellees was altered significantly to mislead the Bankruptcy Court regarding the appellants' post-petition representation of the appellees. In particular, the appellants stated that the first four pages of the letter were on the letterhead of Kenneth H. Godt & Associates (Godt's post-petition law firm) and the last page was on S & G's letterhead; the letter was unsigned; the first line of the last page contained an unfinished sentence from the previous page; the typist's initials at the end of the letter were the initials of a secretary who left S & G several years ago; and the font on the last page was different from the rest of the letter.

Also, the appellants again argued that all of the alleged acts constituting the malpractice occurred before the appellants filed petitions in the Bankruptcy Court. Further, the appellants submitted a letter dated October 1, 1999 which indicated that the appellants terminated their representation of Sylvia Ring five days before they filed petitions in the Bankruptcy Court. The October 1, 1999 letter noted that S & G will no longer engage in the practice of law but that Godt will now practice with the firm of Kenneth H. Godt & Associates. Finally, the appellants argued that even if the appellants provided post-petition services, the act of malpractice occurred prior to the filing of the petitions.

On August 7, 2001, the Bankruptcy Court heard oral argument on the appellees' motion to lift the automatic stay. Initially, the Bankruptcy Court noted that to decide the motion she must apply the factors set forth in *In re Sonnax Indus., Inc. v. Tri Component Prods. Corp.*, 907 F.2d 1280, 1285 (2d Cir.1990). Record at 33. The Bankruptcy Court then stated:

[T]he Sonax [sic] factors which are to be considered in regard to [a] motion for relief from the stay to allow litigation to proceed in another forum indicate that I should look at whether the relief would result in a partial or complete resolution of the issues, and it seems to me it would fix the amount of the claim, so it would serve a very valuable effort; whether the lack—it lacks the connection with or interference with the bankruptcy case. I don't see it interfering with the bankruptcy case. It's a major issue here. One way or another it will have to be dealt with even if it's dealt with under the guise of an exception by the debtor of the—to his discharge or dischargeability of a debt if that's still timely. I don't know. It also is to be considered whether that proceeding in-

volves the debtor as a fiduciary, and it seems to me as an attorney for the parties he was a fiduciary, and in addition, I don't know whether the debtor's insurer has any responsibility here, but there may be a cause of action against the insurer, and that insurer may undertake to defend it. You [the appellants] have not provided me with any information to indicate that that's not possible or available. Whether the action primarily involves third parties. It seems to me that some of the parties here who may or may not have claims here are seeking to bring in parties that would be third parties, not necessarily a party in this bankruptcy.

*Id.* at 33–34. After permitting further oral argument, the Bankruptcy Court then stated that:

I think that there is enough—there are enough issues raised here under the Sonax [sic] factors for me to permit the creditor to go into the state court and get a determination and fix this claim. Whether it's pre-petition or post-petition, I am not prohibited from permitting them to vacate the stay and have it heard elsewhere. I can refuse to hear it, sir, but it seems to me that the determination there would be a determination as to whether there was a doctored letter, whether there actually was such a letter admitting malpractice, whether there was an insurer, and I don't know whether that's a fact or not, and I think that that might make this a lot of simpler, whether the action involves parties that may not be party here. I don't know, but I don't see the need to take up this Court's bankruptcy time in dealing with this, which appears to be a rather serious action in regard to whether there are doctored documents, whether all the documents have survived, and I am going to grant your motion to vacate the stay. You [the appellees]

may proceed in the state court up until a point of a determination as to what that decision is, whatever the decision is. You will then have to come back to this Court for any execution thereon or any other proceeding.

*Id.* at 45–46.

On August 24, 2001, the Bankruptcy Court issued an order lifting the automatic stay pursuant to 11 U.S.C. § 362 allowing the appellees to proceed with their claim for malpractice against S & G in state court. On August 27, 2001, the Clerk of the Bankruptcy Court entered that order. On August 30, 2001, the Bankruptcy Court issued an order lifting the automatic stay pursuant to 11 U.S.C. § 362 allowing the appellees to proceed with their claim for malpractice against Godt in state court. On August 31, 2001, the Clerk of the Bankruptcy Court entered that order. On September 6, 2001, the appellants filed a notice of appeal from the August 24, 2001 order in the Bankruptcy Court. On September 7, 2001, the appellants filed a notice of appeal from the August 30, 2001 order in the Bankruptcy Court.

On October 2, 2001, the Clerk of the Bankruptcy Court transmitted the records on appeal to this Court. On October 3, 2001, the Clerk of this Court docketed the bankruptcy appeals. By letter dated November 1, 2001, counsel to the appellants informed the Court that on October 24, 2001 the Clerk of the Bankruptcy Court advised him that the records on appeal had been erroneously forwarded to the Court in that they were incomplete. Further, counsel to the appellants advised this Court that he will discuss the matter with the Clerk of the Bankruptcy Court, assemble the records on appeal and file them directly with the Court. Also, counsel to the appellants noted that to complete the records on appeal he was waiting for the

August 7, 2001 transcript and the appellees' supplemental affirmation.

On January 29, 2002, the appellants filed the records on appeal with this Court. On February 1, 2002, the appellants filed their brief. On February 11, 2002, the Court granted the appellees an extension to file their opposition brief until February 28, 2002. On February 28, 2002, the appellees filed their opposition brief. In their brief, the appellants raise the following arguments: (1) the appellees failed to establish sufficient "cause" to lift the automatic stay; (2) the Bankruptcy Court failed to find sufficient facts to support its decision to lift the automatic stay; and (3) the appellees filed a proof of claim thereby subjecting themselves to the jurisdiction of the Bankruptcy Court and the claims review process.

## II. STANDARD

■ A district court hearing an appeal from a bankruptcy court reviews that court's findings of fact under the "clearly erroneous" standard, *see* Fed. R. Bankr. 8013, while its conclusions of law are reviewed under the *de novo* standard. *In re AroChem Corp.*, 176 F.3d 610, 620 (2d Cir.1999); *see also In re Bennett Funding Group, Inc.*, 146 F.3d 136, 138 (2d Cir. 1998); *In re Porges*, 44 F.3d 159, 162 (2d Cir.1995).

## III. DISCUSSION

### A. Jurisdiction

■ The filing requirements of Bankruptcy Rule 8002 are jurisdictional and failure to timely file a notice of appeal precludes appellate review. *In re Emergency Beacon Corp.*, 666 F.2d 754, 758 (2d Cir.1981) (finding, under the predecessor rule, namely Bankruptcy Rule 802, that "failure to file timely notice of appeal affects the jurisdiction of a reviewing court

to consider the bankruptcy court's judgment or order."); *In re Wechsler*, 246 B.R. 490, 492 (S.D.N.Y.2000) ("The district courts do not have jurisdiction to review an order of the Bankruptcy Court if the notice of appeal is not timely."); *French Bourekas, Inc. v. Turner*, 199 B.R. 807, 813 (E.D.N.Y.1996) (stating that the failure to file a timely notice of appeal from the bankruptcy court's order constitutes a jurisdictional defect).

Bankruptcy Rule 8002 provides in pertinent part that a "notice of appeal shall be filed with the clerk within 10 days of the date of the entry of the judgment, order or decree appealed from." 11 U.S.C. § 8002(a). On August 27, 2001, the Clerk of the Bankruptcy Court entered the August 24, 2001 order, while on August 31, 2001, she or he entered the August 30, 2001 order. Thereafter, on September 6, 2001, the appellants filed a notice of appeal from the August 24, 2001 order—ten days after the entry date. Also, on September 7, 2001, the appellants filed a notice of appeal from the August 30, 2001 order— seven days after the entry date. As such, the appellants timely filed their notices of appeal under Bankruptcy Rule 8002. Accordingly, the Court has jurisdiction over the present appeals.

■ Next, the Court addresses whether the appellants complied with the remaining bankruptcy rules. Bankruptcy Rule 8009 provides that unless the district court excuses the filing of briefs or specifies a different time limit, "[t]he appellant shall serve and file a brief within 15 days after entry of the appeal on the docket...." 11 U.S.C. § 8009(a)(1). The time limit imposed by Bankruptcy Rule 8009 is "not jurisdictional, and hence the district court is not required automatically to dismiss the appeal of a party who has failed to meet those deadlines." *In re Tampa Chain Co.*, 835 F.2d 54, 55 (2d Cir.1987)

(citation omitted). "Rather, the court should exercise discretion to determine whether dismissal is appropriate in the circumstances...." *Id.* Appropriate circumstances for dismissal include where the appellant has acted in bad faith, negligently, indifferently, or with dilatoriness. *See id.* ("Whether or not ... bad faith, negligence, and indifference are the only proper bases for a district court's exercise of its discretion to dismiss a bankruptcy appeal, we see no abuse of discretion in the present case [where there was evidence of bad faith, negligence and indifference].").

■ Here, the Clerk of the Court docketed the bankruptcy appeals on October 3, 2001. As such, the appellants had until October 18, 2001 to file their brief. The appellants did not file their brief by this date. Rather, by letter dated November 1, 2001, counsel to the appellants informed the Court that on October 24, 2001 the Clerk of the Bankruptcy Court advised him that the records on appeal were erroneously forwarded to the Court in that they were sent incomplete; that he will assemble the records on appeal; and that he will file them directly with the Court. In that letter, counsel to the appellants made no request for an extension of time to comply with Bankruptcy Rule 8009. Then, on January 29, 2002, the appellants filed complete copies of the records on appeal with the Court. And finally, on February 1, 2002, the appellants filed their brief.

As explained below, the Court finds that the appellants' neglect, indifference and dilatoriness were the reasons for the failure to comply with Bankruptcy Rule 8009. First, Bankruptcy Rule 8009 is unambiguous; unless the district court excuses the filing of the briefs or specifies a different time period, the appellant must serve and file her brief within 15 days after the entry of the appeal on the docket. It is undisputed that the appellants failed either to file their brief within 15 days of the docketing of the bankruptcy appeal or to request an extension from the Court. In fact, the appellants filed their brief approximately 3½ months after their brief was due. Second, counsel to the appellants' letter informing the Court that the Clerk of the Bankruptcy Court advised him that the records on appeal were erroneously issued does not excuse appellants' failure to comply with Bankruptcy Rule 8009 or to seek an extension of time to comply with the rule.

Third, counsel to the appellants waited 9 days, until November 1, 2002 to prepare a letter to the Court informing it that the records on appeal were erroneously issued despite being advised of this information by the Clerk of the Bankruptcy Court on October 24, 2001. Fourth, there is no excuse for the appellants' waiting until January 29, 2002, approximately 3½ months after their brief was due, to file a complete copy of the records on appeal. All of the items that should have been part of the records on appeal docketed on October 2, 2001 were designated by the appellants in their designation of items to be included in the record. As such, copies of such documents should have been in the appellants' possession before October 2, 2001. *See* E.D.N.Y. Loc. Bankr.R. 8007–1(a) ("A party filing a designation of items to be included in a record on appeal pursuant to Bankruptcy Rule 8006 shall provide the Clerk with a photocopy of each item designated."). Based upon the foregoing, the Court, in the exercise of its discretion, dismisses the within appeals for failure to comply with the time limits imposed under Bankruptcy Rule 8009.

■ Even assuming that the appellants' failure to abide by the time limits under Bankruptcy Rule 8009 is excusable, on the merits, the Court finds that the Bankrupt-

cy Court did not abuse its discretion when it lifted the automatic stay to permit the appellees to pursue their legal malpractice claim in state court.

## B. The Lifting of the Stay

Upon the filing of a bankruptcy petition, an automatic stay takes place giving the debtor "a short respite from creditors' demands, during which a debtor will have the opportunity to develop and implement plans to right his financial affairs." *In re Bogdanovich*, 292 F.3d 104, 110 (2d Cir.2002) (internal quotation marks and citations omitted). 11 U.S.C. § 362 provides in pertinent part that relief from the automatic stay may be granted after notice and a hearing, among other reasons, "for cause". 11 U.S.C. § 362(d)(1). The movant bears the initial burden of showing "cause" for relief from the automatic stay. *In re Mazzeo*, 167 F.3d 139, 142 (2d Cir. 1999). If the movant makes a showing of "cause", then the burden shifts to the debtor. *Id.* Absent a showing of cause, a court should deny this relief. *Id.* A district court reviews a bankruptcy court's determination on a motion to lift a stay for an abuse of discretion. *Id.*

The bankruptcy code does not define the term "for cause". *In re Bogdanovich*, 292 F.3d at 110. Nevertheless, the Second Circuit has "adopted 12 factors to consider when deciding whether or not to lift a stay in order that litigation may continue to completion in another tribunal." *Id.* (citing *Sonnax Indus., Inc. v. Tri Component Prods. Corp.*, 907 F.2d 1280, 1285–86 (2d Cir.1990)). The factors are as follows:

(1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for [a defense]; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether the movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12)[the] impact of the stay on the parties and the balance of harms.

*In re Sonnax Indus.*, 907 F.2d at 1286.

The facts of a particular case determine which factors will be relevant. *In re Bogdanovich*, 292 F.3d at 110. The final decision whether to lift an automatic stay "depends upon the facts underlying a given motion." *Id.*

As discussed in more detail below, the Court finds that the Bankruptcy Court did not abuse its discretion when it lifted the automatic stay allowing the appellees to proceed with their claim for malpractice against the appellants in state court. First, the Bankruptcy Court applied the correct legal test before deciding the motion to lift the stay. In particular, in its oral decision dated August 7, 2001, the Bankruptcy Court referred to the *Sonnax* factors and noted the relevant factors applicable to the motion. Record at 33–34, 45–46. *But cf. Mazzeo*, 167 F.3d at 143 (stating that "the bankruptcy court did not mention *Sonnax*, or any doctrinal framework, and it is unclear whether that court considered any of the *Sonnax* factors.").

Second, the Bankruptcy Court's findings of fact withstand clear error review. "The 'clearly erroneous' test is not met unless the reviewing court, without reweighing the evidence, is left with the definite and firm conviction that a mistake has been committed." *Campbell ex rel. Campbell v. Metropolitan Property and Cas. Ins. Co.*, 239 F.3d 179, 186 (2d Cir.2001) (internal quotation marks and citations omitted). As to the first factor, whether relief would result in a partial or complete resolution of the issues, the Bankruptcy Court found that the litigation of the malpractice action in state court would fix the amount of the claim thereby resolving the issue. Record at 33.

As to the second factor, lack of any connection with or interference with the bankruptcy case, the Bankruptcy Court found that the litigation of the malpractice action in state court would not interfere with the bankruptcy case. *Id.* As to the third factor, whether the proceedings involve the debtor as a fiduciary, the Bankruptcy Court found that the state litigation involved Godt's role as a fiduciary because he was sued in his capacity as an attorney. *Id.* As to the fifth factor, whether the debtor's insurer has assumed full responsibility for a defense, the Bankruptcy Court noted that the appellants have not provided sufficient information to determine whether there is insurance coverage for the state litigation. *Id.* at 33–34.

As to the sixth factor, whether the action primarily involves third parties, the Bankruptcy Court found that certain parties to the state litigation are not parties to the bankruptcy proceedings. *Id.* at 34. Although the Bankruptcy Court did not refer specifically to the tenth factor, with regard to the interests of judicial economy and the expeditious and economical resolution of litigation, and the twelfth factor, the impact of the stay on the parties and the balance of harms, the Bankruptcy Court did state that the malpractice action will unnecessarily take up the bankruptcy proceeding because the state action involved a purported doctored letter, a letter admitting malpractice, third-parties not in the bankruptcy proceedings and potential pre-petition and post-petition claims. Record at 45–46.

Viewing the Bankruptcy Court's findings of fact with the proper deference, the Court cannot state—with a definite and firm conviction—that a mistake has been made. As such, the findings of fact withstand clear error review. Because the Bankruptcy Court applied the correct legal test and its findings of fact are not clearly erroneous, the Court finds no abuse of discretion. Accordingly, the within appeals are affirmed in their entirety.

 Finally, the Court rejects the appellants' argument that because the appellees filed a proof of claim for the malpractice action in the Bankruptcy Court, 28 U.S.C. § 157(b)(2)(B), it prohibits them from litigating their claim in state court. Section 157(b)(2)(B) applies to Chapter 11 proceedings. *See Bevilacqua v. Bevilacqua*, 208 B.R. 11, 16 (E.D.N.Y.1997). Here, the appellants filed a Chapter 7 petition. As such, Section 157(b)(2)(B) does not impact the Bankruptcy Court's decision to lift the stay.

### III. CONCLUSION

Based upon the foregoing, it is hereby

**ORDERED,** that the appeals, from the orders dated August 24, 2001 and August 30, 2001 by United States Bankruptcy Judge Dorothy Eisenberg lifting the automatic stay pursuant to 11 U.S.C. § 362 allowing the appellees to proceed with their claim for malpractice against the appellants in state court, are dismissed on the ground that the appellants failed to

timely serve and file their brief after the entry of the appeal on the docket as required under Bankruptcy Rule 8009; and it is further

**ORDERED,** that even assuming the appellants' timely filed their brief under Bankruptcy Rule 8009, the appeals are affirmed in their entirety because Judge Eisenberg did not abuse her discretion in granting the appellees' motion to lift the automatic stay allowing the appellees to proceed with their claim for malpractice in state court; and it is further

**ORDERED,** that the Clerk of the Court is directed to close both of these cases.

**SO ORDERED.**